Susan Anita GARCIA and Elizabeth Garcia, by and through their parents and next friends, John L. Garcia and Millie D. Garcia, Rebecca Cardenas, Rachel Cardenas and Lorraine Cardenas, by and through their parent and next friend, Olivia Cardenas, Joseph Rodello and June Rodello, by and through their parents and next friends, Mercedes Rodello and Stephen Rodello, Rene Martinez, by and through her parent and next friend, Rose Martinez, Madaline Duran and Felicia Duran, by and through their parents and next friends, John Duran and Lupe Duran, Richard A. Sanchez Van Schoich, by and through his parents and next friends, Richard A. Van Schoich and Loisa Sanchez Van Schoich, Debra Garcia and Julie Garcia, by and through their parents and next friends, Jerry Garcia and Marcella Garcia, and Lisa Martinez, by and through her parent and next friend, William J. Martinez (plaintiffs in a class action in District Court No. 76–M–292), Plaintiffs-Appellants,

v.

The BOARD OF EDUCATION, SCHOOL DISTRICT NO. 1, DENVER, COLORADO and Dr. Louis J. Kishkunas, Defendants-Appellees.

No. 76–1575.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 30, 1977.

Decided April 6, 1978.

Rehearing Denied May 9, 1978.

Richard W. Laugesen, Jr. of Demoulin, Anderson, Campbell & Laugesen, Denver, Colo. (Jesse Manzanares and Roy R. Martinez, Denver, Colo., on brief), for plaintiffs-appellants.

Richard C. Cockrell, Denver, Colo. (Michael H. Jackson and Peter J. Wiebe, Jr., Denver, Colo., on brief), for defendants-appellees.

Before SETH, Chief Judge, and LEWIS, Circuit Judge and BRIMMER *, District Judge.

LEWIS, Circuit Judge.

This appeal is apparently one of first impression and is premised on an unique factual situation. It involves a suit by members of a minority group seeking to stop the desegregation of their neighborhood school. The suit is an offspring of the lengthy *Keyes v. School District No. 1*[1] desegregation case which resulted, after some seven years of litigation, in a city-wide desegregation plan for Denver, Colorado. The plaintiffs in this suit are Hispanic schoolchildren and their parents who reside in a predominantly Hispanic community in Denver. Prior to the implementation of the desegregation plan all the plaintiff children attended their neighborhood school—Swansea Elementary. Under the plan, one-half of the children attending Swansea (those in grades four through six)

---

\* Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. D. Colo., 313 F.Supp. 61, 90, *rev'd in part,* 10 Cir., 445 F.2d 990, *modified and remanded,* 413 ·

U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548, *on remand,* D. Colo., 368 F.Supp. 207 and 380 F.Supp. 673, *rev'd in part,* 10 Cir., 521 F.2d 465, *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657.

are being bused to a school in another section of the city. It is this transfer which prompted the plaintiffs to file suit, seeking to enjoin the operation of the desegregation plan insofar as it applied to them.

After this suit was filed in the District Court for the District of Colorado defendant school board moved to dismiss the complaint principally on the grounds that plaintiffs were bound by the results of *Keyes* and thus their suit was res judicata. The district court granted defendant's motion. The case having been resolved below on a preliminary motion, this appeal does not allow us to address the plaintiffs' claims on the merits. Our concern is only whether the action was barred by the doctrine of res judicata.

It is necessary in considering plaintiffs' appeal that we review the history of the *Keyes* case looking particularly at the parties and interests involved. The appropriate starting point is the district court's certification of the various classes in a December 1969 unpublished order. The order stated that the plaintiff class consisted of "(a) either Negro or Hispano children who by virtue of the alleged actions of [the school board] are attending schools which are predominantly minority in their racial and ethnic pupil population, and (b) Anglo children attending predominantly Anglo schools by virtue of [school board actions] . . . ." The principal defendant was of course the school board. There was also a class of intervening defendants, however, which consisted of children and parents who opposed plaintiffs' complaint and asserted cross-claims against the school board. The intervenors contended that the school board had not created or maintained de jure segregated schools. They opposed any remedy that would require forced busing away from neighborhood schools and generally opposed any relief beyond a voluntary plan to insure quality education for all Denver schoolchildren.

As to both the plaintiff class and the class of intervening defendants, the district court found that their respective actions were properly maintainable as class actions under Fed.R.Civ.P. 23(b)(2). As a necessary prerequisite to this conclusion, the district court found, and explicitly stated, that the named representatives would fairly and adequately represent the interests of their classes. Fed.R.Civ.P. 23(a)(4).

In conjunction with the certification of the classes the district court ordered notice of the pending suit to be published in the Denver papers. The broad coverage of the plaintiff and defendant classes was reflected in the notice, which was directed to "all Negro, Hispano, Anglo or other school children" attending or eligible to attend the Denver public schools, their parents, and "all taxpayers in the City and County of Denver." The notice set out the various parties and the claims they asserted and was clearly sufficient to meet due process notice requirements for class members in a rule 23(b)(2) class action. *See Ives v. W. T. Grant Co.,* 2 Cir., 522 F.2d 749, 764; *Mattern v. Weinberger,* 3 Cir., 519 F.2d 150, 157–58, *vacated on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812. In addition to the formal publication notice ordered by the *Keyes* court, the *Keyes* case generally received extensive coverage in all Colorado news media.

Plaintiffs' contentions concerning the impact of the *Keyes* litigation are several, the first being that their community was not involved in *Keyes* until the final decree issued in March, 1976. This contention is negated by the record itself. The first explicit mention of Swansea school was in the Supreme Court's *Keyes* opinion decided in June 1973. 413 U.S. 189, 192 n.4, 93 S.Ct. 2686, 37 L.Ed.2d 548. In footnote 4 of that opinion the Court specifically stated that Swansea was one of the "core city schools" alleged to be segregated. On remand to the district court Swansea was further considered and was not included in the desegregation plan because of the institution of a bilingual-bicultural program. 380 F.Supp. 673, 678, 692, 717. This decision not to desegregate was deemed erroneous on appeal and the case remanded for further consideration of Swansea (called Elyria in the opinion) and other Hispanic schools in

the city. 521 F.2d 465, 479–80. It was after this court's decision ordering the reconsideration of Swansea that the school board passed the resolution at issue in this case including Swansea in the desegregation plan. The resolution was approved by the district court.

The preceding review of the Keyes litigation clearly indicates that plaintiffs' community and school were considered part of the case at all relevant times. In fact, the question of whether Swansea, along with several other predominantly Hispanic schools, should be included in the desegregation plan was specifically addressed by this court and the district court. The review of the parties in Keyes also indicates the broad representation of views on the desegregation controversy. Such broad representation is of course desired in a desegregation case as the matter necessarily affects the interests of all parents and children in the school district.

Despite all of the above, plaintiffs argue strenuously that they were not parties to the Keyes litigation. They focus primarily on the plaintiff class, suggesting that because their community was predominantly Hispanic by choice and because they did not wish to take part in any desegregation remedy, their interests were neither the same as, nor adequately represented by, the plaintiff class. This argument ignores a major part of the Keyes case. As was pointed out above, there was a class of intervening defendants, consisting of schoolchildren and their parents, who maintained that the Denver schools were not de jure segregated and objected to any plan which would remove children from their neighborhood schools. In addition, there was another group of intervenors, Congress of Hispanic Educators, which argued for adjustments in the desegregation plan to allow for the special needs of the Hispanic students in Denver. 380 F.Supp. at 694–96.

The claims and interests asserted by the various intervenors seem substantially identical with those asserted by plaintiffs here. To the extent plaintiffs' interests were not represented by the Keyes plaintiffs, therefore, they were certainly vigorously presented and pursued by the intervenors.[2]

■ Having concluded that plaintiffs were parties to the Keyes case and their interests were represented therein, we reach the technical requirements of res judicata to determine whether it may properly be applied in this case. There have been relatively few cases involving collateral attacks on class action judgments. See Note, Collateral Attack on the Binding Effect of Class Action Judgments, 87 Harv.L.Rev. 589. We believe that as a general matter such attacks should not be encouraged. The policy behind the class action device is, of course, to facilitate the final determination of numerous claims in one suit. This policy is not furthered by allowing subsequent collateral attacks by class members. See In re Four Seasons Securities Laws Litigation, 10 Cir., 502 F.2d 834, 843–44, cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309; Note, supra, at 601 n.68. The policy arguments against collateral attacks are particularly compelling in this appeal because of the importance of ending the uncertainty and turmoil that a desegregation suit necessarily spawns and of shifting control over public school matters from the courts back to the local board of education. The application of res judicata to this case must be approached with these policy considerations in mind.

■ It has generally been held that a collateral attack on a class action judgment by unnamed members of the class is impermissible when the class members were adequately represented. See Sam Fox Publishing Co. v. United States, 366 U.S. 683, 691, 81 S.Ct. 1309, 6 L.Ed.2d 604; Hansberry v.

---

2. In addition to the parties already mentioned, there was also an intervenor entitled Citizens Association for Neighborhood Schools. 521 F.2d 465.

   Our purpose in mentioning the various intervenors is not to demonstrate by aggregation that there are no interests presented by plaintiffs here which were not presented in Keyes. Rather, we wish only to show that the broad spectrum of views considered by the district court in Keyes encompassed substantially all of plaintiffs' contentions in this appeal.

*Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22; *Gonzales v. Cassidy,* 5 Cir., 474 F.2d 67, 74. The question of adequate representation can best be resolved by determining whether the interests of those who would attack the judgment were vigorously pursued and protected in the class action by qualified counsel. *See Gonzales, supra,* at 75. The answer in this case seems clearly to be in the affirmative. The fact that the *Keyes* litigation went on for seven years is evidence in itself that it was a hard-fought contest. The desegregation plan that was ultimately adopted by the district court was one developed by the court's own expert. The court rejected each of the parties' plans as being too one-sided. 380 F.Supp. at 682–83. Plaintiffs' argument that their interests were not identical with all those of the plaintiff class in *Keyes* does not preclude the application of res judicata. Where, as we have already shown, substantially all of plaintiffs' interests were vigorously presented in the litigation by the various parties, there is no justification for allowing the litigation to be effectively reopened at this time. We believe the district court was correct in its application of res judicata and the case was properly dismissed.

Affirmed.