**L. H., M. D., E. M., R. C., and T. D., by their attorneys and next friends; John G. Balentine and Terry D. Oehler, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,**

v.

**William S. JAMIESON, Jr., Director of the Arizona Department of Economic Security, and Bruce E. Babbitt, Governor of the State of Arizona, individually and in their official capacities, Defendants-Appellees.**

No. 78–3091.

United States Court of Appeals,
Ninth Circuit.

Submitted Without Oral Argument
Sept. 11, 1980.

Decided May 1, 1981.

Jeanette Ganousis, St. Louis, Mo., Edward A. Linden, Tucson, Ariz., on brief, for plaintiffs-appellants.

C. Eileen Bond, Asst. Atty. Gen., Phoenix, Ariz., on brief, for defendants-appellees.

Before WRIGHT and TANG, Circuit Judges, and GRANT, District Judge*.

PER CURIAM:

This is an appeal from a dismissal of a class action. The appellants are juveniles who have been adjudged dependent, neglected, or delinquent by Arizona state courts and who are presently placed in private, child-caring facilities in Arizona. In 1977, they brought a class action in federal district court against the Governor of Arizona and the director of the Arizona State Department of Economic Security seeking declaratory and injunctive relief on the grounds that the U. S. Constitution and Arizona state law required the defendants to devote additional funding to private agencies that care for children in the state's custody.

The district court dismissed the action pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court also suggested that under *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), abstention may have also been appropriate.

## I Equitable Restraint

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971), and its progeny limit the power of a federal court to take action that may interfere with a pending or ongoing state court proceeding. All the juveniles here have been adjudged delinquent or dependent by Arizona state courts. These courts retain jurisdiction over delinquent and dependent children after an initial placement has been made. Ariz.Rev. Stat.Ann. § 8–246 (1974). The district court apparently concluded that the state courts' continuing jurisdiction over the appellants caused the case to fall within *Younger*, requiring the court to dismiss the action.

■ *Younger* and its progeny share two principal characteristics: (1) the plaintiffs sought to enjoin the continuation of a state proceeding or sought to enjoin state officials from enforcing a state statute,[1] and (2) the basis for federal relief could have been

---

* Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

1. *See Moore v. Sims*, 442 U.S. 415, 422, 99 S.Ct. 2371, 2376, 60 L.Ed.2d 994 (1979) (reversing district court injunctions enjoining state officials from prosecuting any state suit under state child abuse statute and enjoining Montgomery County, Texas Juvenile Court from proceeding with pending child abuse proceeding against federal plaintiffs); *Trainor v. Her-*

raised as a complete or partial defense to a pending or ongoing state enforcement action during the normal course of the state proceeding.[2] When these two characteris-

*nandez*, 431 U.S. 434, 439, 97 S.Ct. 1911, 1915, 52 L.Ed.2d 486 (1977) (reversing federal district court injunction ordering Clerk of State Court and Sheriff to return property attached by writ issued by Clerk and enforced by Sheriff, enjoining all state court clerks and sheriffs from enforcing attachment writs issued pursuant to state attachment statute, enjoining state welfare officials from seeking attachment writs pursuant to state attachment statute); *Juidice v. Vail*, 430 U.S. 327, 330–31, 97 S.Ct. 1211, 1214–1215, 51 L.Ed.2d 376 (1977) (reversing district court injunctions enjoining N.Y. state judges from using statutory contempt procedures against plaintiff class who, in the past or at that time, were subject to civil contempt proceedings); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1975) (reversing district court injunction enjoining town attorney from proceeding with the criminal prosecution of one of the federal plaintiffs where the state court proceeding already pending; affirming a federal district court injunction enjoining town attorney from prosecuting other federal plaintiffs where no criminal proceeding pending against those plaintiffs); *Hicks v. Miranda*, 422 U.S. 332, 340, 95 S.Ct. 2281, 2287, 45 L.Ed.2d 223 (1975) (reversing district court order declaring unconstitutional the state obscenity statute under which several plaintiffs were being prosecuted and enjoining state officials to make good faith efforts to return films which were the subject matter of a pending state criminal proceeding); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 599, 95 S.Ct. 1200, 1205, 43 L.Ed.2d 482 (1975) (reversing federal district court injunction enjoining execution of state court judgment closing federal plaintiff's theater); *Byrne v. Karalexis*, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971) (per curiam) (reversing district court injunction enjoining any civil or criminal proceeding in state courts against the federal plaintiffs); *Perez v. Ledesma*, 401 U.S. 82, 83–84, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971) (reversing district court injunction enjoining state officials to suppress introduction of allegedly obscene materials which were evidence on pending state criminal prosecution against the federal plaintiffs and to return such materials to the federal plaintiffs); *Boyle v. Landry*, 401 U.S. 77, 80–81, 91 S.Ct. 758, 759–760, 27 L.Ed.2d 696 (1971) (reversing federal district court injunction enjoining enforcement of state statute on grounds that federal plaintiffs had failed to demonstrate irreparable injury arising from the statute); *Samuels v. Mackell*, 401 U.S. 66, 68, 73, 91 S.Ct. 764, 765, 768, 27 L.Ed.2d 688 (1971) (affirming federal district court dismissal of federal plaintiffs' complaint which requested an in-junction enjoining a state prosecution under state anarchy statute and requested a declaratory judgment declaring the statute unconstitutional); *Younger v. Harris*, 401 U.S. 37, 40, 91 S.Ct. 746, 748, 27 L.Ed.2d 669 (1971) (reversing federal district court injunction enjoining state district attorney from further prosecution of then pending criminal action against federal plaintiff).

2. *See Moore v. Sims*, 442 U.S. 415, 425–26, 426 n.10, 99 S.Ct. 2371, 2378–2379, 2379 n.10, 60 L.Ed.2d 994 (1979) ("comprehensive attack on an integrated statutory structure" under which authority a child abuse proceeding was conducted should have been raised in the state child abuse proceeding); *Trainor v. Hernandez*, 431 U.S. 434, 446 n.9, 97 S.Ct. 1911, 1919 n.9, 52 L.Ed.2d 486 (1977) (unconstitutionality of state attachment act could have been raised as a defense to enforcement of attachment writ, as "part of the underlying action for fraud"); *Juidice v. Vail*, 430 U.S. 327, 330, 337 n.14, 97 S.Ct. 1211, 1214, 1218 n.14, 51 L.Ed.2d 376 (unconstitutionality of state civil contempt procedures could have been raised as a defense to the enforcement of civil contempt at show cause hearing); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (unconstitutionality of town obscenity ordinance could have been raised as a complete defense to the criminal enforcement of ordinance); *Hicks v. Miranda*, 422 U.S. 332, 350 n.18, 95 S.Ct. 2281, 2292, n.18, 45 L.Ed.2d 223 (1975) (unconstitutionality of state obscenity statute court have been raised as a complete defense to state criminal prosecution under the statute); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608–09, 95 S.Ct. 1200, 1210–1211, 43 L.Ed.2d 482 (1975) (unconstitutionality of state obscenity statute could have been raised on appeal as a complete defense to the enforcement of state obscenity statute against federal plaintiff); *Byrne v. Karalexis*, 401 U.S. 216, 220, 91 S.Ct. 777, 779, 27 L.Ed.2d 792 (1971) (per curiam) (unconstitutionality of state obscenity statute could have been raised as a complete defense to state criminal proceeding enforcing the statute); *Perez v. Ledesma*, 401 U.S. 82, 83–84, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971) (assertion that allegedly obscene materials were protected by the First Amendment could have been raised as a complete defense to enforcement of local obscenity ordinance against federal plaintiffs); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (unconstitutionality of state anarchy statute could have been raised as a complete defense to the enforcement of the statute against the federal plaintiff on pending state

tics are present, the argument for employing equitable restraint is compelling. Halting a pending state proceeding and amputating a federal defense constitutes an affront to the competency of state courts and seriously disrupts the coherency of state efforts to enforce its laws against a particular individual.

When these characteristics are not present, however, the Supreme Court has refused to find the *Younger* concerns sufficiently compelling to warrant federal equitable restraint, even where a plaintiff could have raised his claim in a pending state proceeding. *See Gerstein v. Pugh*, 420 U.S. 103, 107 n.9, 95 S.Ct. 854, 860 n.9, 43 L.Ed.2d 54 (1975) (plaintiff's request for an order directing state court to conduct a probable cause hearing did not enjoin pending state prosecution and could not be raised as a defense to the state prosecution, leaving case outside *Younger*); *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3, 92 S.Ct. 1983, 1989 n.3, 32 L.Ed.2d 556 (1972) (plaintiffs, who challenged state prejudgment seizures procedures, did not seek an injunction against any pending or future court proceedings, leaving case outside *Younger*).

█ The case at bar lacks both of the factual circumstances characterizing past *Younger* decisions. First, the juveniles are not seeking to enjoin any state proceeding, nor are they seeking to enjoin state officials from enforcing any state law. They are instead requesting an order that would require Arizona to spend more money to fund dispositional alternatives for juveniles in state custody. This relief may enrich the variety of dispositional alternatives available to a juvenile court judge, and, to this extent, affect pending and ongoing state juvenile proceedings. It does not, however, have the wholly disruptive consequences associated with enjoining a state judicial proceeding or enjoining further enforcement of a state statute.

Second, the juveniles' claim can not be fairly characterized as a "defense" to the enforcement of any Arizona state statute or statutory procedure. The juveniles are not contesting the validity of any state statute, nor the right of the state to enforce any law against them. Moreover, the juveniles' claim is not of a sort that would be presented during the normal course of a state proceeding. Their cause of action arises *after* a court has committed a juvenile to the state's custody. The state argues that a juvenile may still invoke the jurisdiction of the committing court to modify a placement. Even if that is correct, a juvenile wishing to invoke the court's jurisdiction must act functionally as a plaintiff to revive the state court's active jurisdiction. As a practical matter, the state court has completed its work once it has made its initial placement decision. The coherency of the state action is not disrupted by subsequent federal judicial action, undercutting the need expressed by *Younger* for federal equitable restraint.

In sum, *Younger* does not apply here. The relief the appellants seek is not similar to the types of relief the Supreme Court has found to be sufficiently disruptive or intrusive as to warrant equitable restraint. Nor is the appellants' claim capable of being raised as a defense to an ongoing state enforcement action. The district court therefore erred in dismissing action pursuant to *Younger*.

## II  Abstention

█ Since the district court erred in dismissing the action under *Younger*, we must reach the question whether abstention would have been appropriate under *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In deciding whether to apply the doctrine, the Ninth Circuit has looked to the following considerations:

(1) The complaint "touches upon a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

criminal proceeding); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (unconstitutionality of state criminal syndicalism statute could have been raised as a complete defense to the enforcement of the statute against the federal plaintiff in the pending state criminal proceeding).

(2) "Such constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.

*Canton v. Spokane School District No. 81*, 498 F.2d 840, 845 (9th Cir. 1974), *cited with approval in Rue v. Sillas*, 632 F.2d 74, 78 (9th Cir. 1980); *Manney v. Cabell*, No. 79-3260 (9th Cir. April 29, 1980).

This case seems to be a prime candidate for *Pullman* abstention. The substance of the appellants' complaint clearly "touches upon a sensitive area of social policy." The appellants propose interjecting the federal courts into issues affecting the proper care of juveniles held in the state's custody. These issues have traditionally been left exclusively to the states. These issues are also shot through with serious budgetary, sociological, and political questions.

The second *Pullman* criterion is also met. The gravamen of the juveniles' claim is that the states' "failure to reimburse a private, residential child-caring agency for the agency's cost of care for children placed in that agency" violates both the guarantees of the U. S. Constitution and guarantees of Arizona state law. The only injunctive relief the juveniles seek is to require the state to reimburse private child-caring agencies for their full cost of care.

The statute the appellants rely upon to support their state claim could be interpreted in a way to give them the relief they seek. The appellants rely principally upon Ariz.Rev.Stat.Ann. § 46-134(2)(c)(i), which obligates the Arizona State Department of Economic Security to:

(2) Administer child welfare activities, including:

    (c) Providing *cost of care* of:

        (i) Children, adjudicated by the court as dependent, neglected or delinquent, who are in foster family homes or institutions, except state institutions.

Ariz.Rev.Stat.Ann. § 46-134(2)(c)(i) (Supp. 1979) (emphasis added). The appellants read the words "cost of care" in this section to require the state to pay for additional counseling, therapy, education, diagnosis and child care staff. This interpretation is not wholly implausible, given the state judicial emphasis on rehabilitating and treating juveniles within the state's custody. *See, e. g., McBeth v. Rose*, 111 Ariz. 399, 402, 531 P.2d 156, 159 (1975) (dictum) ("the purpose of the juvenile provisions in Arizona concerns the treatment, not the capacity of the offender").

The third *Pullman* criterion is also satisfied. The determinative issue of state law is doubtful. The Arizona state courts have never had the opportunity to construe Ariz. Rev.Stat.Ann. § 46-134(2)(c)(i). Serious interpretive questions remain unresolved. First, it is unclear whether the state legislature in enacting Ariz.Rev.Stat.Ann. § 8-134(2)(c)(i) meant to confer an implied cause of action to individuals to enforce the statute's command. Second, it is unclear what level of care is required under the statute. *Compare with McRedmond v. Wilson*, 533 F.2d 757, 762-64 (2d Cir. 1976) (*Pullman* abstention improper in juvenile right to treatment suit where state courts had accepted and given substance to state statutory right to treatment claim).

The case at bar appears indistinguishable from *Manney v. Cabell*, No. 79-3260 (9th Cir. April 29, 1980). The plaintiffs in *Manney* were juveniles who brought a civil rights action alleging that confinement conditions at a California state juvenile facility violated the United States and California Constitutions and various state statutes. As in the present case, the state courts had not determined whether the relevant statute created a statutory "right to treatment." Given the absence of state decisions to aid in interpreting the plaintiffs' state claim, the court held that *Pullman* compelled abstention. *See also George v. Parratt*, 602 F.2d 818 (8th Cir. 1979) (action by prisoners challenging state deprivation of "good time" credits subject to abstention on grounds that state courts had not ruled on whether state statutes conferred a right to obtain "good time" credit).

We therefore vacate the district court judgment and remand the case to the district court. The district court is ordered to reinstate the proceedings and, at the request of either party, retain jurisdiction over the federal constitutional issues pending the outcome of state court proceedings on the state claim. *See England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).[3]

VACATED AND REMANDED.

**3.** The state also argues that the judgment below can be affirmed on the ground that the district court could have awarded summary judgment in their favor. The state moved for summary judgment in the district court. However, the district court did not rule on the motion, preferring instead to dismiss the appellants' complaint pursuant to *Younger*.

The state's argument is not persuasive. It is not clear from the record that the district court would have awarded summary judgment in the appellees' favor. The substance of the appellants' claim—that the Constitution confers a "right to treatment" upon juveniles in the state's custody—is a substantial and difficult question. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979) (pretrial detainees are entitled, as a matter of due process, to a minimum level of custodial care); *Estelle v. Gamble*, 429 U.S. 97, 102–04, 97 S.Ct. 285, 290–291, 50 L.Ed.2d 251 (1976) (the 8th Amendment establishes minimum standards of custodial care for prisoners); *Morales v. Turman*, 562 F.2d 993, 998 (5th Cir. 1977) (questioning whether incarcerated juveniles possess a constitutional right to treatment); *McRedmond v. Wilson*, 533 F.2d 757 (2d Cir. 1976) (wayward juveniles who have been institutionalized possess a constitutional right to treatment); *Nelson v. Heyne*, 491 F.2d 352, 358 (7th Cir. 1974), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (juveniles incarcerated in a correctional institution possess a constitutional right to treatment).