LOS ANGELES NAACP, et al., Plaintiffs,

v.

LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., Defendants.

No. CV 81–1811 AWT.

United States District Court, C. D. California.

July 16, 1981.

Thomas I. Atkins, Gen. Counsel, N.A.A.C.P. Special Contribution Fund, New York City, Joseph H. Duff, Los Angeles, Cal., Peter Graham Cohn, San Francisco, Cal., for plaintiffs.

G. William Shea, Peter W. James, David T. Peterson, Michael M. Johnson, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Jerry F. Halverson, Los Angeles, Cal., for defendants Los Angeles Unified School District, Board of Education of the City of Los Angeles, William J. Johnston, Superintendent of Schools.

George Deukmejian, Atty. Gen. of Cal., G. R. Overton, Scott Rasmussen, Deputy Attys. Gen., Los Angeles, Cal., for defendants Edmund G. Brown, Jr., Governor of the State of California, California State Board of Education, California Department of Education, Wilson Riles, Superintendent of Public Instruction.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

In this action against the Los Angeles Unified School District (the "District"), District officials and certain State defendants, the District (or local) defendants have moved to dismiss the action for lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ.P., and for failure to state a claim on which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P. In the alternative, District defendants move that this Court abstain from exercising its jurisdiction "in view of the pending state court proceeding in *Crawford v. Board of Education* (Los

Angeles County Superior Court No. C822854)." The remaining defendants, Governor Edmund G. Brown, Jr., Wilson Riles, Superintendent of Public Instruction, California State Board of Education and California Department of Education (collectively the "State defendants") have also filed motions to dismiss. They join in the local defendants' motion that this Court abstain. Additionally, they assert two grounds peculiar to themselves, Eleventh Amendment immunity and lack of an Article III justiciable controversy.

Although the complaint refers to pendent state claims without alleging what those claims are, the primary claim here is brought under 42 U.S.C. § 1983 for deprivation of constitutional rights. The federal claim alleged is that defendants have instituted and maintained a system of *de jure* segregation in the Los Angeles schools in violation of the Fourteenth and other Amendments of the Constitution. Plaintiff membership associations bring this action on behalf of their members and on behalf of a putative class of all black children attending the Los Angeles City schools.

We first address the grounds on which the local defendants' motion to dismiss is based. These grounds are, first, that this action is barred by the doctrine of res judicata because of prior proceedings in state court and, secondly, that, even if not barred, this Court should abstain from exercising its jurisdiction because of the pendency of ongoing proceedings in state court.

*Res Judicata*

The District defendants contend that the complaint fails to state a claim and that the action should be dismissed because, under the doctrine of res judicata, the claim here has been previously adjudicated in the California state courts. The judgment pleaded as a bar is the opinion and remittitur[1] of the California Court of Appeal in *Crawford v. Board of Education*, 113 Cal.App.3d 633, 170 Cal.Rptr. 495 (1980), *petition for cert. filed*, U.S.L.W. (No. 81–38, Jul. 8, 1981)

("*Crawford II*"). Disposition of this contention requires a brief summary of the long history of the state court proceedings.

*Crawford* was commenced in the Los Angeles Superior Court in 1963, shortly after the landmark decision in *Jackson v. Pasadena City School Dist.*, 59 Cal.2d 876, 31 Cal. Rptr. 606, 382 P.2d 878 (1963). In *Jackson*, the California Supreme Court stated that a school desegregation action stated a cause of action "even in the absence of . . . affirmative discriminatory conduct by the school board," that where segregation exists in fact, "it is not enough for a school board to refrain from affirmative discriminatory conduct," and that "the right to an equal opportunity for education and the harmful consequences of segregation require that school boards take steps, insofar as reasonably feasible, to alleviate racial imbalance in schools regardless of its cause." *Id.* at 881, 31 Cal.Rptr. 606, 382 P.2d 878. In short, *Jackson* eliminated any practical distinction between *de jure* and *de facto* segregation insofar as it may have affected the right to seek a judicially ordered remedy to school segregation. It is obvious that *Jackson* served as a benchmark in guiding the actions of the parties in *Crawford* and the lower courts for 17 of the 18 years during which that action has been pending.

*Crawford* was originally brought as a class action on behalf of a limited number of black school children, but the class allegations were later amended to include all black and Mexican school children in the District. Although the state courts appear implicitly to have treated the case as a proper class action, nothing in the record here indicates that any hearing was held or any express determination was ever made that the case was properly a class action, that it should proceed as such, that the class sought to be represented was appropriate or that the representatives were adequate and proper; indeed, there has never been any

---

1. Under California law the remittitur of an appellate court is its final judgment. Rule 25(a), Cal. Rules of Court. It is equivalent to the

mandate in federal practice. *See* Rule 41(a), Fed.R.App.P.

determination of who the members of the class are.[2]

The action was bifurcated and liability was tried by the late Judge Alfred T. Gitelson for 65 days between October 1968 and May 1969. By stipulation of the parties, approved by the court, evidence as to liability was limited to the period from the filing of the complaint in 1963 to commencement of trial in 1968. On May 12, 1970, Judge Gitelson filed his findings of fact and conclusions of law, finding in favor of plaintiffs, and issued a peremptory writ of mandate. In his findings, Judge Gitelson found *de jure* segregation.

An appeal was taken and, in 1976, the California Supreme Court modified and affirmed Judge Gitelson's decision. *Crawford v. Board of Education*, 17 Cal.3d 280, 130 Cal.Rptr. 724, 551 P.2d 28 (1976) (*"Crawford I"*). Although the court stated that, "The findings in this case adequately support the trial court's conclusion that the segregation in the defendant school district is de jure in nature," it further stated, "that we do not rest our decision on this characterization because we continue to adhere to our conclusion in *Jackson* that school boards in California bear a constitutional obligation to take reasonably feasible steps to alleviate school segregation 'regardless of its cause.'" *Id.* at 285, 130 Cal.Rptr. 724, 551 P.2d 28.[3]

On remand to the Superior Court, extensive hearings were held commencing in early 1977 with respect to the appropriate remedy. A number of plans were proposed and rejected and in February 1978, an interim plan involving mandatory busing, Plan 2,

was ordered to be implemented the following September. While hearings were being conducted on whether or not Plan 2 should be continued in effect, the California electorate approved Proposition 1, an initiative measure on the November 6, 1979, ballot, amending Article I, section 7(a), of the California Constitution. Proposition 1 provided that pupil assignment and pupil transportation were available as remedies under the California Constitution only when such a remedy would be available in federal courts for violation of the Fourteenth Amendment of the United States Constitution. Thus, the effect of Proposition 1 was to nullify *Jackson* and the line of cases following *Jackson* under which pupil assignment and transportation were available remedies for school segregation "regardless of its cause," *i. e.*, whether it was *de jure* or *de facto.*

Shortly after Proposition 1 was adopted, defendants in *Crawford* applied for modification of Plan 2. In 1980, the Superior Court denied the application under Proposition 1 and adopted Plan 3, involving more extensive mandatory pupil assignment than Plan 2, to be implemented in September of that year. The District appealed and on December 19, 1980, the California Court of Appeal, in *Crawford II*, vacated the order adopting Plan 3 and the case was "remanded to the trial court for further proceedings consistent with this opinion." 113 Cal. App.3d at 656, 170 Cal.Rptr. 495. In reviewing the 1970 findings, *Crawford II* first noted that, "the trial court made these deductions and inferences in 1970 at a time it did not have the benefit of the more recent

---

**2.** The District defendants correctly point out that at the time *Crawford* was filed and through the trial on liability there were no formalized procedures in California akin to Rule 23, Fed.R.Civ.P., for the determination of class issues, although class actions have long been recognized under California law. Cal. Code Civ.Proc. § 382 (enacted in 1872); *see, e. g., Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (1967). On the other hand, implicit in defendants' position is that class membership has remained open-ended throughout the 18 years of the state court litigation and remains open, *i. e.*, as minority

children become of school age they are automatically co-opted into the class. The issues raised by this fluid class concept are addressed, *infra.*

**3.** Apparently because no issue with respect to the class aspects of the case was raised, the only reference by the California Supreme Court to any class aspect of the case was the passing statement that, "plaintiffs ... filed this class action" shortly after *Jackson. Id.* 17 Cal.3d at 286, 130 Cal.Rptr. 724, 551 P.2d 28. *Crawford II* also contains no mention of the class aspects of the case.

decisions of the United States Supreme Court."[4] *Id.* at 644, 170 Cal.Rptr. 495. It then concluded that, "When the 1970 findings of the trial court are reviewed in the light of the correct applicable federal law, it is apparent that no specific segregative intent with discriminatory purpose was found." *Id.* at 645, 170 Cal.Rptr. 495. Treating the trial court's findings of *de jure* segregation as a "characterization" and a conclusion of law not binding on an appellate court, *Crawford II* held:

> "In sum, no federal violation of law was established by the 1970 findings, and the trial court's identification of the then existing racial segregation within the Los Angeles school system as de jure segregation was true only in the Pickwickian sense, and was not true at all in the sense of federal law. Because there was no evidence of acts done with specific segregative intent and discriminatory purpose, there was no federal constitutional violation—regardless of the terminology used by the court."

*Id.* at 646, 170 Cal.Rptr. 495. The California Supreme Court denied a hearing and, as noted earlier, a petition for writ of certiorari is now pending before the United States Supreme Court.

■ As most recently stated by the Supreme Court, "There is little to be added to the doctrine of res judicata as developed in the case law of this court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* —— U.S. ——, ——, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Thus, application of res judicata depends on the presence of two elements: First, a *final* judgment on the merits and, second, identity of parties or their privies. On the record here—the complaint and judicially noticed

facts under Rule 201, Fed.R.Evid., of proceedings in *Crawford* as reflected in documents supplied by the parties—I conclude that neither of these requirements has been met.

■ District defendants contend that the remittitur in *Crawford II* is a final judgment. However, its very words defy characterizing it as *final.* It remands the case to the Superior Court for further proceedings. As recently noted by the Supreme Court in a slightly different but analogous context:

> "Under California law, an appellate court reversal of a trial court decision has the effect of vacating the judgment and returning the case to the trial court for a new trial 'as if no judgment had ever been rendered.' See *Erlin v. National Fire Ins. Co.,* 7 Cal.2d 547, 549 [61 P.2d 756] (1936); *Salaman v. Bolt,* 74 Cal. App.3d 907, 914, 141 Cal.Rptr. 841, 844 (1977). Thus, the losing party on appeal may introduce additional evidence. See *Gospel Army v. Los Angeles,* 331 U.S. 543, 547–548, 67 S.Ct. 1428, 1430, 91 L.Ed. 1662, quoting *Erlin, supra.* Although this rule regarding new trials does not apply if the appellate court did not intend a new trial, *Stromer v. Browning,* 268 Cal. App.2d 513, 518–519, 74 Cal.Rptr. 155, 158 (1968), such as when the appellate court decides a dispositive issue which does not turn on facts which might change on retrial, *id.,* at 519; 74 Cal.Rptr., at 160, the Court of Appeal clearly contemplated a possible retrial here."

*Minnick v. California Dep't of Corrections,* —— U.S. ——, —— – ——, 101 S.Ct. 2211, 2222–23, 68 L.Ed.2d 706 n.37 (1981) (determination by California Court of Appeal reversing trial court judgment not "final" for purposes of certiorari jurisdiction under 28 U.S.C. § 1257(3)).

---

4. For this reason alone, collateral estoppel is also inapplicable to this case. *Commissioner v. Sunnen,* 333 U.S. 591, 599–602, 68 S.Ct. 715, 720–721, 92 L.Ed. 898 (1948); *see also, Los Angeles Unified School Dist. v. United States Dist. Court,* 650 F.2d 1004 at 1012 (9th Cir. 1981) (Ferguson, J., dissenting) ("Collateral es-

toppel may not be applied in situations in which intervening modifications in the law create a new legal climate."), and cases cited therein. The same exception also may preclude the application of res judicata. *State Farm Mut. Auto. Ins. Co. v. Duel,* 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812 (1945).

In *Crawford*, pursuant to the Court of Appeal's remittitur in *Crawford II*, further proceedings on remand have resumed in the Superior Court. In fact, plaintiffs in *Crawford* have taken the position that they are entitled to reopen or retry the issue of *de jure* segregation. Thus, the possibility of a retrial and the taking of additional evidence remains open; certainly, *Crawford II* does not clearly preclude such a result. There is no final judgment.[5]

Finally, with respect to this requirement, the District defendants' second basis for this motion makes it plain that no final judgment exists. That basis is that this Court should abstain from exercising its jurisdiction because not to do so would interfere with the pending proceedings in *Crawford*. The rhetorical question which immediately comes to mind is, How can there be a final judgment if the proceedings are still pending? To ask the question is to answer it. *E. g., Federated Dept. Stores, supra; Gospel Army v. Los Angeles*, 331 U.S. 543, 67 S.Ct. 1428, 91 L.Ed. 1662 (1947); *McGourkey v. Toledo & Ohio Ry.*, 146 U.S. 536, 545, 13 S.Ct. 170, 172, 36 L.Ed. 1079 (1892); *Beebe v. Russell*, 60 U.S. (19 How.) 283, 15 L.Ed. 668 (1857).

The answer to the second inquiry, identity of parties or their privies, is more easily ascertainable when only individual parties—as opposed to classes—are involved. Here, the problem is even more complicated than in an ordinary class action because the class or classes involved in the prior action have never been defined or determined. The problem arises primarily because under the District defendants' contention there is no end to the size of and membership in the class. Because the state courts have, at best, only implicitly determined that *Crawford* is properly a class action, there has never been any determination as to the time period involved or the date after which those black children coming of school age will no longer automatically become co-opted into the class. It was probably intended by the Superior Court that all black and Mexican school children in the District as of the date its writ of mandate was issued in 1970 be treated as members of the class and bound by the judgment. But should those who have come of school age since then be treated as members of this implicit class? Should black children who have come of school age since *Crawford II*, contended by local defendants to be a final judgment, be treated as implicit class members? If the answer to either of these questions is in the affirmative, should such school children be barred from litigating claimed *de jure* segregation occurring since 1970 or since 1980?

Because no class was ever formally certified by the trial court in *Crawford*, the scope of the class for res judicata purposes must be determined by implication from Judge Gitelson's 1970 findings of fact and conclusions of law, which were "final" in at least the same sense as *Crawford II* is claimed to be "final". *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979); *Bing v. Roadway Express*, 485 F.2d 441, 447 (5th Cir. 1973). There is no intimation that Judge Gitelson intended to include all future school children within the scope of his

---

5. Although it is unnecessary to reach the issue, it should be noted that *Crawford II* may not meet the final judgment requirement for another reason. In *Federated Dep't Stores, supra*, — · U.S. at ——, 101 S.Ct. at 2427, while noting its own "rigorous application" of the doctrine, the Supreme Court expressly refused to decide whether res judicata applied to additional state law claims not raised in the prior federal action. *Id.* at ——, 101 S.Ct. at 2429; *compare id.* at ——, 101 S.Ct. at 2429 (Blackmun, J., concurring) ("... in contrast, I would flatly hold that Brown I [the prior action] is res judicata as to respondents state law claims"). In *Crawford II*, the California Supreme Court's opinion in *Crawford I* was interpreted to make

clear that the claim in *Crawford* was a state law claim. As stated by the Court of Appeal, in *Crawford I*, "state law was formally severed from federal law, and school boards were placed under an affirmative duty ... to alleviate segregation ... regardless of the cause of the segregation. The existence of the duty was derived both from state decisional law and from the equal protection clause in article I, section 7, subdivision (a) of the California Constitution." 113 Cal.App.3d at 651, 170 Cal. Rptr. 495 (citations omitted). *Crawford* is, thus, the converse of *Federated Dep't Stores* —the prior action being a state law claim and the subsequent one federal.

order.[6] *Cf. Johnson, supra,* 598 F.2d at 435 (decree in prior case included all present and future employees subjected to employment discrimination).

■ The claim to be adjudicated here is whether or not *de jure* segregation exists today in the District schools. The claim adjudicated in *Crawford* was whether or not, based on evidence limited to the 1963–1968 period, segregation existed in the District schools in 1970, when the liability findings were rendered. No other determination of liability has been made in *Crawford.* Because of the difference between these claims,[7] those putative members of the class here who were not of school age on May 12, 1970, the date of Judge Gitelson's findings of fact, but are of school age at this time are not similarly situated to the children who were of school age at the earlier date. For res judicata purposes, then, the class now before the state court includes only those children who were class members in 1970.[8] Conversely, children who have entered the school system since that time are not members of that class, and not barred by res judicata from asserting their rights here.

■ The doctrine of virtual representation, adopted by some courts, is not applicable to this situation. "Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Electric, supra,* 554 F.2d at 1233; *Aerojet General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *See also, Garcia v. Board of Education, School District No. 1,* 573 F.2d 676, 680 (10th Cir. 1978). The multitude of significant events that have transpired since 1970 give rise to serious doubts that the interests of the children who are now attending school are substantially identical to the interests of the children who were attending school in 1970. Only the latter interests were presented and pursued before Judge Gitelson, and it would be a denial of due process to bar those children who have since come of age from pursuing their own interests before this Court.

If there was a final judgment, then, the parties in *Crawford* and before this Court are not identical.[9]

For these reasons, it is concluded that the doctrine of res judicata is inapplicable on the record here.

---

**6.** It is doubtful that in 1970, Judge Gitelson expected remedy to still be at issue 11 years later.

**7.** Because the claims are different, the issues in this case are not the same as the issues that were before the state trial court in 1970. The test for determining whether claims are duplicative is:

"[W]hether a different judgment in the subsequent action would impair the rights created pursuant to the judgment rendered in the prior action; whether the evidentiary basis of the first and second actions is the same, or whether the essential facts and issues were similarly presented in both cases."

*Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (citations omitted). Judge Gitelson's 1970 opinion considered the defendants' conduct only during the period from 1963 to 1968; and he reached the determination that the schools were segregated as of the time that the liability trial concluded. *Crawford I, supra,* 17 Cal.3d at 288, 130 Cal. Rptr. 724, 551 P.2d 28. No new liability findings have been rendered since that time. Accordingly, even if any of the state court decisions are considered final, this Court may decide whether there is segregation in 1981 without impairing any of the rights created in any of the previous liability "judgments." Plaintiffs here allege a continuing course of conduct on defendants' part, including acts which both ante date and post date the 1963–1968 period considered by Judge Gitelson. I, therefore, find that the claims are not the same and that there is no identity of issues between this case and the pending state proceeding. This, of course, constitutes an independent ground for the inapplicability of res judicata.

**8.** Although *Crawford II,* contended by the local defendants to be a final judgment, was not decided until 1980, it merely reversed Judge Gitelson's 1970 findings of *de jure* segregation and, therefore, did not alter the class.

**9.** It requires no discussion to conclude that they also are not privies in any legal sense. *See* Restatement of Judgments § 83.

*Abstention*

The District defendants next contend that this Court should abstain from exercising its jurisdiction and dismiss the action. They are joined in this contention by the State defendants. Defendants rely on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, particularly *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

The law regarding abstention was recently reviewed and restated in *L. H. v. Jamieson*, 643 F.2d 1351 (9th Cir. 1981) (*per curiam*). In that case the court canvassed all of the applicable Supreme Court cases and concluded:

> "*Younger* and its progeny share two principal characteristics: (1) the plaintiffs sought to enjoin continuation of a state proceeding or sought to enjoin state officials from enforcing a state statute, and (2) the basis for federal relief could have been raised as a complete or partial defense to a pending or ongoing state enforcement action during the normal course of the state proceeding. When these two characteristics are present, the argument for employing equitable restraint is compelling . . . .
>
> "When these characteristics are not present, however, the Supreme Court has refused to find the *Younger* concerns sufficiently compelling to warrant federal equitable restraint, even where a plaintiff could have raised his claim in a pending state proceeding."

*Id.* at 1352–54 (footnotes and citations omitted).

■ Neither of the conditions required for the application of *Younger*-type abstention is present here. Plaintiffs do not seek to enjoin either continuation of a state proceeding or the enforcement of a state statute by state officials. Since there is or never has been any state "enforcement" action, plaintiffs could not have raised the basis for federal relief here as a complete or partial defense to such a pending state enforcement action.

Under *L. H. v. Jamieson, supra*, the most recent and controlling Ninth Circuit authority, *Younger*-type abstention is inapplicable.

*Colorado River Dismissal*

The next ground for dismissal raised by the District defendants and joined in by the State defendants is that this action should be dismissed in order to avoid duplicative litigation. Defendants primarily rely on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in which the Supreme Court held that a federal court may dismiss a case involving a question of federal law where a concurrent state action is pending in which the identical issues are raised.

The lower federal courts have long held that a federal district court has the power to stay an action where there is a pending state action presenting the same issues in order to foster the interests of judicial administration: comprehensive disposition of litigation, conservation of judicial resources; and fairness to parties. *E. g., Weber v. Consumer's Digest, Inc.*, 440 F.2d 729 (7th Cir. 1971); *Klein v. Walston & Co., Inc.*, 432 F.2d 936 (2d Cir. 1970) (*per curiam*); *Amdur v. Lizars*, 372 F.2d 103 (4th Cir. 1967); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595 (9th Cir. 1964); *Milk Drivers and Dairy Employees Union v. Dairymen's League Co-op. Ass'n*, 304 F.2d 913 (2d Cir. 1962); *Beiersdorf & Co., Inc. v. McGohey*, 187 F.2d 14 (2d Cir. 1951); *Mottolese v. Kaufman*, 176 F.2d 301 (2d Cir. 1949).

■ In *Colorado River*, the Court articulated the controlling legal standard justifying the stay or dismissal of an action in federal court because of a concurrent state court proceeding, even though federal jurisdiction is properly invoked.[10] The general

---

10. In *Colorado River*, the Court also analogized to cases involving disputes over the disposition of specific property, in which the court first obtaining jurisdiction over the property may exercise its jurisdiction to the exclusion of other courts, citing, *inter alia, Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *United States v. Bank of New York Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936). Because "there is only one Los Ange-

rule is that the pendency of an action in state court is no bar to proceedings concerning the same matter in federal court. *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910); see *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). While there are circumstances which permit dismissal of a federal suit due to the presence of concurrent state proceedings, these circumstances are exceptional. *Colorado River, supra*, 424 U.S. at 817–18, 96 S.Ct. at 1246.

■ Thus, the focus under *Colorado River* is "upon whether exceptional circumstances exist which indicate that concurrent jurisdiction by state and federal courts is likely to cause piecemeal litigation, waste of judicial resources, inconvenience to the parties, and conflicting results." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1980). Other factors to be considered include the inconvenience of the federal forum and the order in which jurisdiction was obtained by the concurrent forums. *Colorado River, supra*, 424 U.S. at 818, 96 S.Ct. at 1246.

Dismissal, however, is proper only when, in the judgment of the court, any adverse consequences outweigh in a given situation the "unflagging obligation" of the federal courts to exercise the jurisdiction given to them. *Id.* at 817–18, 96 S.Ct. at 1246; *Tovar v. Billmeyer, supra*, 609 F.2d at 1293. "No one factor is necessarily determinative; a carefully considered judgment, taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise, is required." *Id.* It should also be noted that in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 663–64, 98 S.Ct. 2552, 2557–58, 57 L.Ed.2d 504 (1978) (plurality opinion), a case subsequent to *Colorado River*, the Supreme Court held that the decision whether to defer to the concurrent jurisdiction of a state court is a matter committed to the district court's discretion.

In *Tovar v. Billmeyer, supra*, the Ninth Circuit indicated that in cases where the plaintiffs assert a right to relief under 42 U.S.C. § 1983, the obligation of the federal courts to exercise the jurisdiction given to them is "particularly weighty." 609 F.2d at 1293. The Court stated:

"Under such circumstances conflicting results, piecemeal litigation, and some duplication of judicial effort is the unavoidable price of preserving access to the federal relief § 1983 assures. While we need not conjecture whether there exist circumstances that could outweigh the 'unflagging obligation' in section 1983 cases, we are convinced that they do not exist in this case."

*Id.*

■ As in *Tovar v. Billmeyer, supra*, the circumstances here militate against deference to pending state court proceedings. First, there is no exceptional circumstance, such as the McCarran Amendment, 43 U.S.C. § 666, which *Colorado River* found embodied a clear federal policy of avoiding the piecemeal adjudication of water rights in a river system. 424 U.S. at 819, 96 S.Ct. at 1247. On the contrary, § 1983 evinces a strong congressional policy of providing a federal forum to those alleging a violation of their rights under the United States Constitution. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Tovar v. Billmeyer, supra*, 609 F.2d at 1293. Second, there is no question of inconveniencing the parties by a distant forum since both fora sit in Los Angeles. Third, although *Crawford* was filed long before this action, the able trial judge who presided over *Crawford's* remedy phase since *Crawford I* was decided has recently resigned and was replaced only this year by a judge who is new to the case. Finally, the fact that *Crawford* has been pending in the state courts for 18 years is a factor which militates in favor of this Court's exercising its "unflagging obligation" rather than ab-

---

les Unified School District," the District defendants contend that this action should be dismissed because the state courts first obtained jurisdiction over the District. This is not a

dispute over the disposition of property and direct application of any analogy to probate or trust or corporate liquidation proceedings is completely inapposite.

staining from it. This circumstance gives rise to the inference that the expeditious resolution of the claims made in these two cases will not necessarily be better served by dismissal of this case in deference to *Crawford.* Despite its long history, *Crawford*'s ultimate resolution is far from clear. As stated earlier, *Crawford II*'s remittitur may permit, if not require, a retrial of the liability phase, because of changes in the law in the 11 years since Judge Gitelson issued the writ of mandate. On such a retrial or reopening of liability, plaintiffs may seek to be relieved of their stipulation to limit evidence on liability to the five-year period from 1963 to 1968.[11]

Based on all the circumstances, I conclude that dismissal of this case under *Colorado River* would be inappropriate. I, therefore, decline to dismiss this case in deference to *Crawford.*[12]

*The Eleventh Amendment*

We turn now in this and the succeeding sections to the two additional grounds raised by the State defendants for dismissal of this action against them. As stated earlier, the State defendants include Governor Edmund G. Brown, Jr., Wilson Riles, the Superintendent of Public Instruction, the California State Board of Education and the California Department of Education.

■ All of the State defendants contend that this action is barred by the Eleventh Amendment of the Constitution. It would serve no purpose to set forth here the history of the development of Eleventh Amendment immunity since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That task has recently been most ably per-

formed by Judge Schwartz in a related case, *NAACP v. California,* 511 F.Supp. 1244, 1249-59 (E.D.Cal.1981). As Judge Schwartz noted, with respect to suits against a state agency, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam*), remains controlling and under its flat ruling, even suits seeking only injunctive relief against a state agency are barred by the Eleventh Amendment. *See also, Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353 (9th Cir. 1977), *rev'd in part on other grounds sub nom. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (involving bistate agency created by interstate compact).

■ Under the Eleventh Amendment, therefore, this action must be dismissed as against defendants California State Board of Education and California Department of Education.[13]

*Case or Controversy*

■ It has long been held that the "case or controversy" requirement of Article III of the Constitution is jurisdictional. *E. g., Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see NAACP v. California, supra,* 511 F.Supp. at 1259-63. To meet the "standing" requirement necessary to give rise to a case or controversy, plaintiffs must demonstrate not only injury, but also that there is a "'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438

---

**11.** If this action is dismissed and if such reopening and relief are not sought or not permitted, plaintiffs here will have been deprived of the opportunity to have their constitutional claims fully presented.

**12.** Nothing in *Colorado River* indicates that a declination to dismiss in deference to a state court proceeding at this early stage of the case is not subject to reconsideration upon a showing of changed circumstances. Obviously, a determination not to exercise a *Colorado River* dismissal can be based only on the circumstances as they now exist.

**13.** Because the case or controversy requirement, *infra,* is dispositive as to them and because other factors not now before the Court may require consideration if an amended complaint is filed as to them and the Eleventh Amendment is again raised as a bar, it is unnecessary to and the Court declines to reach the Eleventh Amendment issue with respect to defendants Governor Brown and Superintendent Riles at this time.

**1064**

U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Nat'l Wildlife Fed'n v. Adams,* 629 F.2d 587, 594 n.11 (9th Cir. 1980). Standing also requires that the "prospective relief will remove the harm." *Warth v. Seldin, supra,* 422 U.S. at 505, 95 S.Ct. at 2208.

In this action alleging generally that defendants have created the conditions of *de jure* segregation in the Los Angeles schools, nowhere in the complaint is there any allegation of any intentional act by either the Governor or Superintendent of Public Instruction which proximately contributed to the current segregated state of the schools. In fact, the only mention of the Governor anywhere in the complaint is the allegation that the members of the State Board of Education are appointed by the Governor.

Plaintiffs were unable to answer at oral argument what specific relief, if any, could be ordered against these defendants, were plaintiffs to prevail at trial. In fact, plaintiffs' written opposition to the State defendants' motion to dismiss is tantamount to an admission that no case or controversy exists:

> "Contrary to the assumption of the state defendants, which is incorporated as a premise to their Article III dismissal motion, plaintiffs would not immediately proceed to preliminarily enjoin the described *future* conduct of state defendants (*e. g.* reduction of appropriations in aid of desegregation) until that conduct was clearly and manifestly threatening irreparable injury to plaintiffs' class."

(Plaintiffs' Opposition to State Defendants' Motion to Dismiss, p. 14.) This admission also highlights an additional reason why no case or controversy exists as between plaintiffs and these defendants. What plaintiffs seek from the State defendants is funding in aid of desegregation. Even assuming education is a matter of statewide concern, plenary authority over education, including funding, is constitutionally vested in the state legislature. Cal.Const., Art. IX, §§ 1 & 6.

For these reasons, I conclude that the complaint fails to state a claim against defendants Governor Brown and Superintendent Riles and that this Court lacks subject matter jurisdiction. However, because this is plaintiffs' first attempt, leave will be granted, if plaintiffs so choose, to file an amended complaint as against these defendants. In granting such leave, I am mindful that another court has reached a different conclusion on apparently similar allegations, although the Eleventh Amendment and Article III issues appear not to have been raised there. *San Francisco NAACP v. San Francisco Unified School Dist.,* 484 F.Supp. 657 (N.D.Cal.1979). Although the State defendants' alternative motion for a more definite statement has now been mooted, if plaintiffs choose to amend they should address the case or controversy requirement by specific factual allegations. In doing so, the legitimate concern of the State defendants for a more definite statement should be met.

*Order*

For the foregoing reasons,

IT IS ORDERED:

1. The motion to dismiss of the District defendants is denied.

2. The motion to dismiss of the defendants California State Board of Education and California Department of Education is granted without leave to amend and the action is hereby dismissed as against said defendants.

3. The motions to dismiss of defendants Governor Brown and Superintendent Riles are granted with 20 days' leave to file an amended complaint.