714 F.2d 946
 13 Ed. Law Rep. 45
 LOS ANGELES BRANCH NAACP, Beverly Hills-Hollywood NAACP, San
Pedro-Wilmington NAACP, Watts NAACP, San Fernando
Valley NAACP and Carson NAACP,
Plaintiffs-Appellants,
v.
LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., Defendants,
and
California State Department of Education, Bill Honig,
Superintendent of Public Instruction, in his official
capacity,* and George Deukmejian, Governor,
in his official capacity,*
Defendants-Appellees.
 No. 81-5936.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1983.
Decided Sept. 1, 1983.
 
 Peter Graham Cohn, NAACP, Eva Jefferson Paterson, San Francisco, Cal., Nancy B. Reardan, Sacramento, Cal., William Robinson, Norman Chachkin, Washington, D.C., Thomas I. Atkins, Brooklyn, N.Y., Teresa Demchak, Margrett Ford, New York City, Joseph H. Duff, Los Angeles, Cal., for plaintiffs-appellants.
 G.R. Overton and Scott Rasmussen, Deputy Attys. Gen., Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ELY, GOODWIN and SNEED, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The NAACP brought this class action against the California State Department of Education, the California State Board of Education, the California Superintendent of Public Instruction, and the Governor of California. The NAACP alleged that these state entities and officials, along with a group of local defendants,[1] had created and maintained an unconstitutionally segregated school system in the Los Angeles Unified School District.
 
 
 2
 The state defendants moved to dismiss the action under Fed.R.Civ.P. 12(b) for lack of jurisdiction and for failure to state a claim on which relief can be granted. The district court granted the motion of the State Department of Education and the State Board of Education, holding that, as state agencies, these defendants were immune from suit in the federal courts under the Eleventh Amendment to the United States Constitution. The district court also dismissed the claims against the Superintendent of Public Instruction and the Governor, but gave the NAACP leave to amend its complaint to allege a case or controversy against these parties sufficient to meet the requirements of Article III. 518 F.Supp. 1053. The district court then dismissed the amended complaints against the Superintendent and the Governor, concluding that the NAACP had failed to establish the existence of a justiciable case or controversy between itself and the Superintendent or Governor. We reverse the dismissal of all claims except for that against the Governor, and hold that suit against the Governor is barred by the Eleventh Amendment.
 
 I.
 CASE OR CONTROVERSY
 
 3
 In concluding that no justiciable case or controversy between the NAACP and the Superintendent and Governor was alleged, the district court pointed out that the NAACP had failed to assert in its original and amended complaints any intentional act on the part of the Governor and the Superintendent of Public Instruction which proximately contributed to school segregation, or to suggest specific remedies which could be ordered against them. The State Board of Education and the Department of Education also argue that the claims against them should have been dismissed on the same grounds. We disagree and hold that the NAACP has alleged a justiciable case or controversy against each of the state defendants.
 
 
 4
 Under the case or controversy requirement of Article III, the parties seeking to invoke the court's jurisdiction must show that they personally have "suffered some actual or threatened injury as the result of the putatively legal conduct of the defendant ..., and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).
 
 
 5
 Our reading of the NAACP's first amended complaint reveals that the NAACP alleged an actual injury traceable to the actions of the state defendants. According to the NAACP, each of the state defendants engaged in intentional acts which resulted in the de jure segregation of the Los Angeles Unified School District, and failed to take positive steps "to eliminate from the public schools all vestiges of [that] state-imposed segregation." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971).[2] Since this suit is a class action brought on behalf of black children eligible to attend the Los Angeles schools, who would be directly affected by the state defendants' actions if this allegation is later supported by facts, the complaint is sufficient to meet the "causation" element of the case or controversy requirement. See, e.g., Davis v. Board of Education of North Little Rock, 674 F.2d 684, 689 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982) (a victim of past de jure school segregation alleges a justiciable case or controversy as long as a unitary system of education has not yet been achieved); Ybarra v. City of San Jose, 503 F.2d 1041, 1044 (9th Cir.1974).
 
 
 6
 The state defendants argue, however, that even if they engaged in de jure segregation in the past, they are now without power to remedy any segregation still existing in the Los Angeles schools, because the responsibility for school desegregation in California rests with the local school boards. The issue is a difficult one but we believe the NAACP has the better of the argument.
 
 
 7
 First, while it appears that the local school boards retain the primary responsibility for desegregation of the public schools, California law does allocate a role to each of the state defendants in achieving and maintaining desegregated schools. See San Francisco NAACP v. San Francisco Unified School District, 484 F.Supp. 657, 662-68 (N.D.Cal.1979) (detailing sources in California law for the responsibility of the State Board of Education, State Department of Education, and Superintendent of Public Instruction in achieving school desegregation); Tinsley v. Palo Alto Unified School District, 91 Cal.App.3d 871, 154 Cal.Rptr. 591 (1979) (desegregation is the responsibility of state officials in California).[3] There exists, we believe, a "substantial likelihood" that, should unlawful segregation be found here, the district court could formulate a remedy in which the state defendants could participate. See Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 79, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978).
 
 
 8
 As already indicated, the state defendants err in their assumption that a justiciable case or controversy can only be raised in this case against the local educational authorities that have heretofore been accorded primary responsibility for desegregation. The crux of the NAACP's complaint is not that the state defendants should supersede the role of the local educational authorities in school desegregation, but that, under the facts of this case, the state defendants should share with the local authorities the duty of taking affirmative steps to remedy continuing unlawful segregation. Whether this claim has merit is for the district court to decide on remand. What is clear is that such a claim, raised by a class of plaintiffs who allege an injury directly traceable to the defendants' actions, gives rise to a case or controversy sufficient to meet the requirements of Article III. See O'Shea v. Littleton, 414 U.S. 488, 495-98, 94 S.Ct. 669, 675-77, 38 L.Ed.2d 674 (1974).
 
 II.
 ELEVENTH AMENDMENT
 
 9
 A. State Department of Education and State Board of Education
 
 
 10
 Identical treatment of each of the state defendants, however, is not possible under the Eleventh Amendment. That Amendment bars a suit against a state and its agencies and instrumentalities unless the state has consented to the filing of the suit. Quern v. Jordan, 440 U.S. 332, 339-40, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978); Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir.1982); see generally 1979 Duke L.J. 1042. Focusing on the State Department of Education and the State Board of Education initially, we agree with the district court's characterization of them as state agencies. The district court also held that the Eleventh Amendment barred this suit against them, relying on Alabama v. Pugh, supra. The NAACP argues, however, that the Eleventh Amendment does not apply here because Congress has abrogated the Eleventh Amendment immunity of state educational agencies in desegregation cases.[4] We agree with the NAACP and on this part company with the district court.
 
 
 11
 Eleventh Amendment immunity can be waived by the state, or by Congress acting pursuant to its enforcement powers under section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). All admit that California has not waived its immunity in the present case, but the NAACP argues that Congress abrogated California's immunity from suit in desegregation cases by enacting 20 U.S.C. §§ 1701-1758, 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. The NAACP's argument regarding the latter three statutes is without merit, but with respect to 20 U.S.C. §§ 1701-1758 the situation is different.
 
 
 12
 State immunity under the Eleventh Amendment "will be considered abrogated ... only when the statute or its legislative history clearly indicates a Congressional intention to abrogate that immunity." V.O. Motors, Inc. v. California State Board of Equalization, 691 F.2d 871, 872 (9th Cir.1982). Neither 28 U.S.C. § 1331, nor § 1343, nor 42 U.S.C. § 1983 contains an expression of Congressional intent to abrogate California's immunity. Therefore none operates to lift the Eleventh Amendment bar. See, e.g., Quern v. Jordan, 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979) (Eleventh Amendment immunity not abrogated by § 1983); Corbean v. Xenia City Board of Education, 366 F.2d 480, 481 (6th Cir.1966), cert. denied, 385 U.S. 1041, 87 S.Ct. 776, 17 L.Ed.2d 685 (1967) (§ 1343); Bailey v. Ohio State University, 487 F.Supp. 601, 606 (S.D.Ohio 1980) (§ 1331);[5] see generally Note, 68 Va.L.Rev. 865 (1982).
 
 
 13
 The Equal Educational Opportunities Act of 1974, 20 U.S.C. §§ 1701-1758, involves a very different analysis. 20 U.S.C. § 1703 provides, in part, that:
 
 
 14
 No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools; (b) the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps ... to remove the vestiges of a dual school system; ... (d) discrimination by an educational agency on the basis of race, color, or national origin in the employment conditions, or assignment to schools of its faculty, or staff .... (emphasis added)
 
 
 15
 For the purposes of section 1703, an "educational agency" is "a local educational agency or a 'State educational agency' as defined by [20 U.S.C. § 3381(k) ]." Id. § 1720. Section 3381(k) explains that the "term 'State educational agency' means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law."[6] And section 1706 permits an "individual denied an equal educational opportunity, as defined by this subchapter[, to] institute a civil action in an appropriate district court of the United States against such parties, and for such relief, as may be appropriate." Thus, the Equal Educational Opportunities Act clearly authorizes desegregation suits against state educational agencies. See, e.g., United States v. School District of Ferndale, 577 F.2d 1339, 1347-48 (6th Cir.1978).
 
 
 16
 Since the California State Board of Education and the California State Department of Education fall within the Act's definition of "state educational agency,"[7] and Congress, acting under the Fourteenth Amendment, see 20 U.S.C. § 1702, explicitly provided for desegregation suits against this type of agency, we hold that the Eleventh Amendment immunity of the California agency defendants has been abrogated.
 
 
 17
 The state defendants do not dispute our reading of the Equal Educational Opportunities Act. Instead, they point out that the NAACP failed to plead in its original and amended complaints that Eleventh Amendment immunity could be waived, and that the Act provides a basis for waiver in this suit.[8] The state defendants contend that the NAACP should be barred from presenting its waiver argument for the first time on appeal.
 
 
 18
 We disagree. A party's failure to present in its complaint the specific basis for federal jurisdiction "is not fatal [when] the facts alleged are sufficient to support such jurisdiction." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 70 n. 14, 98 S.Ct. 2620, 2629 n. 14, 57 L.Ed.2d 595 (1978) (allowing § 1331 jurisdiction even though that basis for jurisdiction was not pleaded below). "Defective allegations of jurisdiction may be amended ... in the ... appellate courts." 28 U.S.C. § 1653. Since the NAACP's complaint unquestionably raises sufficient facts to provide for a complaint under the jurisdictional section of the Equal Educational Opportunities Act, 20 U.S.C. § 1706, we hold that the Act may be pleaded here for the first time on appeal, and that the waiver argument therefore was properly presented here even though the NAACP failed to advance it below. Cf. Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) (an Eleventh Amendment defense is jurisdictional in nature and can be raised for the first time on appeal, even where the state conceded jurisdiction below).
 
 
 19
 B. Superintendent of Public Instruction and Governor
 
 
 20
 Our analysis proceeds differently with respect to the Superintendent of Public Instruction and the Governor even though Eleventh Amendment concerns are also implicated in actions against state officials sued in their official capacities. Such actions are, in essence, brought against the state entity of which the officer is an agent. See Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir.1982). The Eleventh Amendment bars such actions in the absence of a waiver. But "the Eleventh Amendment does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." Id. See Ex Parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). No waiver is required.
 
 
 21
 The NAACP claims that, since it seeks only declaratory and injunctive relief against the Superintendent and the Governor acting in their official capacities, no Eleventh Amendment immunity bars their suit. The Superintendent and Governor do not dispute the applicability of the Ex Parte Young doctrine to them in the abstract. They contend, however, that here it is inapplicable. The Superintendent asserts that he is immune because a judgment in favor of the NAACP would require the payment of funds from the state treasury. The Superintendent then joins the Governor in arguing that the Eleventh Amendment should protect them because there is insufficient connection between them and the relief that the NAACP hopes to obtain.
 
 
 22
 The Superintendent's first argument is without merit. The NAACP does not seek retrospective damages from the Superintendent, and thus does not contravene the Eleventh Amendment bar against such actions. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). That the issuance of an injunction against the Superintendent would make it more likely that California would have to spend money from the State treasury than if he had been left to pursue his previous course of conduct does not affect the type of relief available to the NAACP here. Id. at 668, 94 S.Ct. at 1358.
 
 
 23
 The Superintendent's second argument, as applied to him, is equally without merit. The Supreme Court explained in Ex Parte Young, 209 U.S. at 157, 28 S.Ct. at 453, that:
 
 
 24
 In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.
 
 
 25
 (Emphasis added). See Southern Pacific Transportation Co. v. Brown, 651 F.2d 613, 615 (9th Cir.1980). It is clear that the Superintendent does have a connection with the unconstitutional acts alleged by the NAACP which is sufficient to meet the requirements of Ex Parte Young. According to the NAACP, past superintendents helped to authorize and maintain a racially segregated school system in Los Angeles. First Amended Complaint at 11-12. Also, the Superintendent allegedly has not attempted to remedy this segregation, even though the Superintendent has a duty to do so under California law, since he is the secretary and executive officer of the State Board of Education, Cal.Educ.Code § 33004, and it is the policy of the Board "to adopt procedures for the orderly implementation of the obligation of districts to alleviate racial and ethnic segregation of minority students." 5 Cal.Admin.Code § 91(b). See San Francisco NAACP v. San Francisco Unified School District, 484 F.Supp. 657, 662-67 (N.D.Cal.1979).
 
 
 26
 However, our rejection of the Superintendent's arguments against the application of Ex Parte Young is, as to him, redundant. As already pointed out, the Equal Educational Opportunities Act abrogates any immunity he might have thought he possessed. Our discussion of Ex Parte Young, however, is particularly relevant to the Governor.
 
 
 27
 The Governor's connection with the unconstitutional acts alleged in the NAACP's complaint is much more tenuous than that of the Superintendent. California law does not allocate to the Governor a role in combating racial school segregation, although he does have a constitutional duty to see that the laws of the state are faithfully executed. Cal. Const. Art. V, § 1. Nor is he an "educational agency" within the meaning of the Equal Educational Opportunities Act.[9]
 
 
 28
 The question then arises whether a general obligation to enforce state law satisfies the Ex Parte Young "connection" requirement. This issue has been a subject of much disagreement. Compare, e.g., Allied Artists Picture Corp. v. Rhodes, 679 F.2d 656, 665-66 n. 5 (6th Cir.1982), aff'g 496 F.Supp. 408, 424-27 (S.D.Ohio 1980) (general duty to enforce laws is sufficient connection), with, e.g., Shell Oil Co. v. Noel, 608 F.2d 208, 211-12 (1st Cir.1979) (general duty is not enough; of critical importance are nature of statute and officer's connection to statute). However, these and related cases involve a threat by a state official to enforce an allegedly unconstitutional statute then in force in the state. See generally NAACP v. California, 511 F.Supp. 1244 (E.D.Cal.1981), aff'd, 711 F.2d 121 (9th Cir.1983).
 
 
 29
 In the present case, in contrast, the NAACP does not seek to enjoin the Governor from enforcing existing unconstitutional state laws which provide for de jure segregation of the Los Angeles schools. Instead, the NAACP hopes to require the Governor to take affirmative steps to eliminate the effects of laws long since repealed. But, as the NAACP admits, the Governor's powers in this area are limited to making general policy and budget recommendations, as well as administrative appointments. First Amended Complaint at 12. It is obvious, therefore, that the purpose of joining the Governor as a defendant in this suit is not to remedy the effects of unconstitutional segregation since the Governor lacks the power to do so, but to use the Governor as a surrogate for the state, and thereby to evade the state's Eleventh Amendment immunity. This the NAACP cannot do. See Ex Parte Young, 209 U.S. at 157, 28 S.Ct. at 453.
 
 
 30
 Thus, the Governor's general duty to enforce California law under the circumstances of this case does not establish the requisite connection between him and the unconstitutional acts alleged by the NAACP. Because of this, and the failure of Congress to waive the Governor's immunity under its Fourteenth Amendment powers, we hold that the Eleventh Amendment bars this suit against the Governor.
 
 
 31
 REVERSED AND REMANDED.
 
 
 
 *
 Superintendent Honig and Governor Deukmejian have been substituted for Superintendent Wilson Riles and Governor Edmund G. Brown, Jr., who were named as parties when this suit was brought. Fed.R.App.P. 43(c)(1)
 
 
 [1]
 The local defendants, the Los Angeles Unified School District, the Board of Education of the City of Los Angeles, and the Los Angeles Superintendent of Schools, moved for summary judgment on the ground that the suit against them was barred by the adjudication of an identical claim in Crawford v. Board of Education (Superior Court of Los Angeles County No. C822854). The district court denied the motion, 518 F.Supp. 1053, 1056-60, and certified an interlocutory appeal separate from the present appeal
 
 
 [2]
 According to the First Amended Complaint, the Los Angeles schools were segregated de jure from 1863 until as late as 1947 under state laws fostered and administered by the state defendants, and the state defendants did not take affirmative steps to eliminate the effects of this segregation. Indeed, the NAACP claims that the state defendants helped to perpetuate past de jure segregation by their policies of school construction and renovation, setting boundaries and attendance zones, hiring and promoting faculty, busing, disregarding federal laws and regulations, seeking federal funds for segregated schools, certifying segregated schools, failing to urge the adoption of legislation to dismantle a dual school system in Los Angeles, and recommending budgets which were inadequate to remove the effects of school segregation. First Amended Complaint at 15-19, 23-25
 
 
 [3]
 The Superintendent of Public Instruction, in addition to his other duties, Cal.Educ.Code §§ 33110-33190, is the secretary and executive officer of the State Board of Education, id. § 33004, as well as the executive officer of the Department of Education. Id. §§ 33302-33303
 Also, it should be noted that the Governor was not a party to either of the cases cited above, and the Governor's responsibility for school desegregation under California law appears to extend only to his power to sign or veto legislation, formulate general state policies, and appoint state administrative officials, see Appellants' Opening Brief at 16-17, as well as to his duty to execute the laws of the state. See NAACP v. California, 511 F.Supp. 1244, 1261 (E.D.Cal.1981), aff'd, 711 F.2d 121 (9th Cir.1983). The Governor argues that his duties, unlike those of the state educational authorities, do not give him responsibility for school desegregation, and that he would be unable to remedy any de jure segregation in the Los Angeles schools. The NAACP replies that the Supreme Court has approved, at least by implication, the joining of a governor as a defendant in a desegregation suit. See Milliken v. Bradley, 418 U.S. 717, 722, 94 S.Ct. 3112, 3116, 41 L.Ed.2d 1069 (1974). We need not ask the district court on remand to find whether these powers and duties are sufficient to raise a justiciable case or controversy against the Governor in this case, however, since we hold below that he is immune from suit here under the Eleventh Amendment.
 
 
 [4]
 The NAACP also contends that Pugh does not apply to school desegregation cases, citing, inter alia, to Milliken v. Bradley, 418 U.S. 717, 722, 94 S.Ct. 3112, 3116, 41 L.Ed.2d 1069 (1974), in which the named defendants included several state officers and the State Board of Education. We disagree. Pugh was decided after Milliken v. Bradley, and holds that a suit for injunctive relief against a state agency in a civil rights action is barred by the Eleventh Amendment. That Pugh was a short per curiam decision does not detract from its validity. Moreover, the relevant passage in Pugh was cited with approval by the Court in Quern v. Jordan, 440 U.S. 332, 340, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979). See also V.O. Motors, Inc. v. California State Board of Equalization, 691 F.2d 871, 872 (9th Cir.1982)
 
 
 [5]
 The NAACP also contends that the Fourteenth Amendment, without more, abrogates Eleventh Amendment immunity. This argument is without merit. Congress must act affirmatively under its Fourteenth Amendment powers to waive Eleventh Amendment immunity. See Jagnandan v. Giles, 538 F.2d 1166, 1182-85 (5th Cir.1976), cert. denied, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); see also Ex parte Young, 209 U.S. 123, 150, 28 S.Ct. 441, 450, 52 L.Ed. 714 (1908)
 
 
 [6]
 20 U.S.C. § 3381(k) includes every state agency or officer empowered by state law to enforce compliance in the public schools with the requirements of the Act and the Fourteenth Amendment and not merely the single state entity primarily responsible for state supervision of the public schools. See Idaho Migrant Council v. Board of Education, 647 F.2d 69 (9th Cir.1981) (state board of education, department of education, and superintendent of public instruction are subsumed in section 3381(k))
 
 
 [7]
 As we note above, both the State Board of Education and the State Department of Education are empowered under California law to help remedy past de jure segregation
 
 
 [8]
 The NAACP pleaded 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983, but neglected to plead the Equal Educational Opportunities Act
 
 
 [9]
 The Equal Educational Opportunities Act does not waive the immunity of a Governor, only that of state educational agencies and officials. See 20 U.S.C. § 3381(k). No other statute waives the Governor's immunity here