980 F.2d 736
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CHINLE UNIFIED SCHOOL DISTRICT NO. 24 OF APACHE COUNTY;
Holbrook Unified School District No. 3 of Navajo County;
Grand Canyon Unified School District No. 4 of Coconino
County; Parker Unified School District No. 27 of La Paz
County; Myron Maxwell; Bill Jeffers; and Daniel Simper,
Plaintiffs-Appellants,
v.
C. Diane BISHOP, in her official capacity as Arizona
Superintendent of Public Instruction, Defendant-Appellee.
 No. 92-15325.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1992.
Decided Nov. 13, 1992.
 
 Before ALARCON and CYNTHIA HOLCOMB HALL, Circuit Judges, and DWYER, District Judge.*
 MEMORANDUM**
 Chinle Unified School District, three other school districts in Arizona and several of their taxpaying inhabitants appeal from the district court's denial of injunctive relief and dismissal on Eleventh Amendment grounds of their claim that C. Diane Bishop, Arizona's Superintendent of Public Instruction, violated 20 U.S.C. § 240(d) by reducing state aid to the school districts based on their receipt of federal impact aid prior to a federal administrative determination that she may do so. The plaintiff school districts sought injunctive and declaratory relief from defendant Bishop's January 15, 1992, decision to reduce fiscal year 1991-92 state school aid to the districts because they received federal funds under Public Law 81-874, 20 U.S.C. § 236, et seq.
 We dismiss the school districts' appeal from the denial of injunctive relief as moot, but reverse the district court's dismissal of the request for declaratory relief and remand for further proceedings on the declaratory relief claim.
 I.
 On January 15, 1992, C. Diane Bishop, Arizona's Superintendent of Public Instruction, announced her decision to reduce fiscal year 1991-92 state school aid to school districts that receive federal impact aid under 20 U.S.C. § 236 et seq. On January 28, the plaintiff school districts filed this action challenging Bishop's decision and seeking declaratory and injunctive relief. The school districts contend that 20 U.S.C. § 240(d) prohibits Bishop from reducing state aid based on federal impact aid receipts before the U.S. Department of Education has determined that she may do so for a particular year.
 The federal government grants impact aid directly to local school agencies whose abilities to raise revenue through local taxation are adversely affected by the presence of federal activities in their areas. In general, state officials may not reduce the amount of state aid they allocate to school districts that receive impact aid, because the purpose of the federal aid is to supplement not supplant state contributions. 20 U.S.C. § 240(d)(1). However, states whose school funding schemes are designed to equalize public education expenditures among local educational agencies are permitted to reduce state aid on the basis of impact aid receipts. 20 U.S.C. § 240(d)(2). The provisions of that exception to the general prohibition, and its implementing regulations, 34 C.F.R. § 222.60 et seq., specify that a state may reduce its aid under the exception in a particular year if the Secretary of Education certifies that its funding scheme qualifies in that year as one which equalizes expenditures.
 The school districts argue in this case that under the statute and regulations, Bishop may not reduce 1991-92 state aid prior to receiving federal administrative certification that Arizona's school funding scheme qualifies in 1991-92 as one which equalizes expenditures. For fiscal years 1983 through 1988, the Department of Education did certify Arizona's equalization scheme, but on May 1, 1991, the Department notified Bishop that Arizona's scheme did not qualify for fiscal years 1989 and 1990. Bishop contested that adverse determination, and administrative review proceedings are still pending. On May 15, 1991, the Department advised Bishop that in light of its adverse determination for 1989 and 1990, and considering the fact that Arizona apparently has not changed its funding scheme since those years, she should not reduce state aid for 1991 and 1992. Nevertheless, in January 1992, Bishop announced that she would reduce 1991-92 state aid beginning the following month. The reductions for that fiscal year were completed when the year ended in June 1992.
 After the district court dismissed this action in February 1992 and the school districts filed a timely notice of this appeal, the same school districts filed an action in Arizona state court alleging what appear to be substantially the same counts alleged in federal court. The school districts have argued that they initiated the state court action because the district court held that the Eleventh Amendment barred relief in federal court. The state court denied the districts' request for interlocutory relief, and on June 17, 1992, granted Bishop's motion for summary judgment. The parties dispute whether the state court determination was on the merits.
 On June 26, Bishop moved to dismiss this appeal of the district court's judgment on the ground that the state court decision granting summary judgment in her favor divested the federal court's jurisdiction to entertain the appeal. Relying on D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), she argued that because the school districts chose to litigate the underlying issues of this appeal in the state court, they can now only seek review in the Arizona appellate courts. She also argued that this appeal is moot, because all of the claims in the case relate to funding decisions for fiscal year 1991-92, which ended on June 30, 1992.
 II.
 The Eleventh Amendment to the U.S. Constitution embodies the principle of sovereign immunity, and thus bars private suits by individuals against states and their instrumentalities. The rule announced in Ex Parte Young, 209 U.S. 123 (1908), provides an exception, however, under which persons may seek prospective injunctive and declaratory relief against state officers for alleged violations of federal law. The Supreme Court has stated that "the Young doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.' " Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 105 (1984), citing Young, 209 U.S. at 160.
 The school districts argue that the Young exception applies here, and that therefore the district court erroneously dismissed this action on Eleventh Amendment grounds. Whether a party is immune from suit under the Eleventh Amendment is a question of law that we review de novo. Durning v. Citibank, N.A., 950 F.2d 1419, 1422 (9th Cir.1991).
 In determining whether the school districts' claims fall within the Young exception, the key question is whether the declaratory and injunctive relief they seek is prospective in nature, or whether it more nearly resembles retrospective, monetary relief. In Edelman v. Jordan, 415 U.S. 651 (1974), the Court stated that Young only permits prospective relief intended to compel state officers to conform their conduct to federal law, and not monetary awards against states themselves. The Edelman Court noted, however, that a suit against a state officer may fit the Young exception even though it seeks relief that would have a fiscal impact on the state treasury if that impact is the necessary consequence of future compliance. Id. at 667-68.
 The line between permissible prospective and impermissible retrospective relief is difficult to discern. The Supreme Court has said that the Eleventh Amendment bars relief that in effect compensates a party injured in the past by a state official's action in contravention of federal law. See Papasan v. Allain, 478 U.S. 265, 278 (1986); Edelman, 415 U.S. at 651. Yet the Court approved of a decree requiring state payments to programs intended to redress past wrongs because those programs were "part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system." Milliken v. Bradley, 433 U.S. 267, 290 (1977) (emphasis in original). Ultimately, the Court's rule appears to be that it will "look to the substance rather than to the form of the relief sought, ... and will be guided by the policies underlying the decision in Ex parte Young." Papasan, 478 U.S. at 279 (citation omitted).
 In substance, the character of the relief sought here is prospective, as it is intended to compel Bishop to conform her future conduct to federal law. Both the declaratory and injunctive relief originally sought were unquestionably prospective at the time this action was filed in January 1992, because that filing preceded Bishop's implementation of the state aid reductions in February 1992. However, as Bishop points out in her motion to dismiss this appeal, the 1991-92 reductions contested in this case were completed when the 1991-92 fiscal year closed in June. To support that motion, Bishop argues that an Eleventh Amendment bar to this suit fell in place when the reductions were complete in June, because any relief thereafter awarded would be retrospective.
 We find that the school districts' request for injunctive relief from Bishop's 1991-92 reductions is now moot, as those reductions are complete, but that neither the Eleventh Amendment nor the mootness principle bars declaratory relief. A declaratory judgment determining the legality under 20 U.S.C. § 240(d) of Bishop's actions to reduce state aid before final federal administrative authorization would substantially affect her future conduct in this area. Thus, the only potential fiscal effect of such relief would be ancillary to a determination of the legality of her actions under federal law; the declaratory relief therefore would conform to Edelman.
 A declaratory judgment in favor of the school districts could affect Arizona's treasury by preventing Bishop in the future from reducing state aid based on federal impact aid receipts. But the Eleventh Amendment does not bar this suit on the basis of that potential result. In a suit alleging the creation and maintenance of an unconstitutionally segregated school system, this court held that the Eleventh Amendment did not bar injunctive and declaratory relief against the state Superintendent of Public Instruction simply because relief "would make it more likely that California would have to spend money from the state treasury than if he had been left to pursue his previous course of conduct." Los Angeles Branch NAACP v. Los Angeles Unified School District, 714 F.2d 946, 952 (9th Cir.1983), cert. denied, 467 U.S. 1209 (1984).
 III.
 Because we have found that the school districts' claim for declaratory relief is neither moot nor barred by the Eleventh Amendment, we remand for further proceedings on that claim.[1] On remand, the district court should consider whether the Arizona state court judgment on essentially this same claim has any preclusive effect under res judicata or the Rooker-Feldman doctrine. The district court should note that the school districts filed the state court action after the district court dismissed the federal court action and the school districts filed notice of this appeal. Accordingly, Bishop's motion to dismiss this appeal is denied without prejudice to her presenting her contentions to the district court.
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable William L. Dwyer, District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 If the Defense Authorization Act for Fiscal Year 1993, H.R. 5006, 102d Cong., 2d Sess. (1992), becomes law before the district court considers this case on remand, the district court should determine whether Section 387 of that Act has any preclusive effect on this action as to any of the parties