**LOS ANGELES NAACP et al., Plaintiffs,**

**v.**

**LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendant.**

**No. 81–1811 AWT.**

United States District Court, C. D. California.

April 17, 1981.

718

Thomas I. Atkins, General Counsel, N.A.
A.C.P. Special Contribution Fund, New
York City, Joseph H. Duff, Los Angeles,
Cal., Peter Graham Cohn, San Francisco,
Cal., for plaintiffs.

G. William Shea, Peter W. James, David
T. Peterson, Michael M. Johnson, McCutch-
en, Black, Verleger & Shea, Jerry F. Hal-
verson, Los Angeles, Cal., for defendants
Los Angeles Unified School District, Board
of Education of the City of Los Angeles,
William J. Johnston, Superintendent of
Schools.

George Deukmejian, Atty. Gen. of the
State of Cal., G. R. Overton, Deputy Atty.
Gen., Los Angeles, Cal., Geoffrey L. Gray-
bill, Deputy Atty. Gen., Sacramento, Cal.,
for defendants Edmund G. Brown, Jr., Gov-
ernor of the State of Cal., California State
Board of Ed., California Dept. of Ed., Wil-
son Riles, Superintendent of Public Instruc-
tion.

TASHIMA, District Judge.

This is a civil rights action brought under
42 U.S.C. § 1983, for alleged violation of the
Fourteenth Amendment. Plaintiff mem-
bership associations purport to bring this
action as a class action on behalf of their
members, the children of their members
and as representatives of a class consisting
of all black children within the boundaries
of the Los Angeles Unified School District,
consisting of over 200,000 children. Obvi-
ously, at this early stage, no determination
has yet been made under Rule 23, Fed.R.
Civ.P., whether this action should properly
proceed as a class action.

The constitutional violation alleged is
that defendants and their predecessors,
since the earliest days of statehood, have
instituted and maintained a system of de
jure segregation—a racially dual system of
education—one for whites and one for mi-
norities—which has been sanctioned and ap-
proved by state law and by actions taken by
the defendants under color of state law. It
is alleged that intentional acts of racial
segregation to perpetuate this dual system
have been committed by defendants since
Brown v. Board of Education was decided
by the Supreme Court in 1954. Plaintiffs
contend that the Board of Education's reso-
lution of March 16, 1981 is itself an inten-
tional, segregative act. They seek a Tem-
porary Restraining Order ("TRO"), re-
straining the school board from putting
that resolution, which plaintiffs character-
ize as "dismantling the mandatory student
desegregation in the District," into effect.

This hearing today concerns only the is-
suance of the TRO. Defendants have not
yet responded to the complaint. They do
oppose issuance of the TRO on several bas-
es:

1. That plaintiffs are barred by the doc-
trine of res judicata, by virtue of the judg-
ment of the State Court of Appeal in Craw-
ford v. Board of Education, 113 Cal.App.3d
633, 170 Cal.Rptr. 495 (1981), that this law-
suit has been tried and a final judgment
rendered.

■ I find on the record now before me,
and for the purpose of this hearing only,
that res judicata does not apply. That doc-
trine requires identity of the parties.

Plaintiffs here were not plaintiffs in *Crawford* and there has been no showing that any class was certified in *Crawford* or who that class consisted of so that this Court can determine whether the putative class here would be bound by the prior judgment.

It is not necessary today to reach any other issues with respect to *res judicata.*

2. Defendants next claim that this Court should not intervene in a pending state court proceeding, that other federal courts in the past have refused to intervene. This is essentially an abstention argument bottomed on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although the *Younger* doctrine has been applied in civil proceedings, this application has been carefully limited. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 392, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). It is not clear that *Younger* should be extended to this type of case.

Moreover, all of the previous federal cases involving this controversy called to this Court's attention were cases filed before Proposition 1 (Cal.Const., Art. I, § 7) became effective. In that posture, all of the rulings of the state courts rested on an adequate and independent non-federal ground; namely, the finding of *de facto* segregation in accordance with *Jackson v. Pasadena City School Dist.*, 59 Cal.2d 876, 31 Cal.Rptr. 606, 382 P.2d 878 (1963). Justice Rehnquist's refusal to intervene in 1978, before the passage of Proposition 1, was because he found that the complaints there were "complaints about state law." *Bustop, Inc. v. L. A. Board of Education*, 439 U.S. 1380, 1383, 99 S.Ct. 40, 41, 58 L.Ed.2d 88 (1978).

█ In this case, plaintiffs rely primarily on violations of the federal constitution; moreover, it is the complaint of different plaintiffs than in *Crawford*. In these circumstances, I conclude, again only for the purpose of this hearing, that abstention by a federal trial court is neither required nor proper. *See Canton v. Spokane School Dist. # 81*, 498 F.2d 840, 846 (9th Cir. 1974).

We must, therefore, reach the merits of plaintiffs' application. In this circuit, the standard for preliminary injunctive relief is either (1) probable success on the merits and the possibility of irreparable injury, or (2) serious questions are raised and the balance of harm tips sharply in plaintiffs' favor. *Benda v. Grand Lodge, I.A.M.*, 584 F.2d 308, 314–315 (9th Cir. 1978). On the alternate test, plaintiffs must demonstrate at least "a fair chance of success on the merits."

To meet the alternate test, plaintiffs must show a fair chance that they will prove that there was a *de jure* dual system at the time of *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), or that a dual system has been maintained since 1954—that there have been intentional segregative actions by the defendants since that time.

█ Unless the plaintiffs can demonstrate that the Board intentionally segregated the system in the first place, or was under an affirmative obligation to desegregate the system based on a finding that there was a *de jure* dual system at the time of *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*see Columbus Board of Education v. Penick*, 443 U.S. 449, 464, 99 S.Ct. 2941, (1979); *Keyes v. School Dist. No. 1, Denver, Colo.*, 413 U.S. 189, 201–02, 208, 93 S.Ct. 2686, 2694–95, 2697, 37 L.Ed.2d 548 (1973)), nothing prohibits its rescission of the busing plan imposed by the Superior Court and the March 16 resolution is not unconstitutional. *Dayton Board of Education v. Brinkman*, (Dayton II), 443 U.S. 526, 531 fn. 5, 99 S.Ct. 2971, 2976, 61 L.Ed.2d 720 (1979); *Dayton Board of Education v. Brinkman*, (Dayton I), 433 U.S. 406, 413–14, 97 S.Ct. 2766, 2772–73, 53 L.Ed.2d 851 (1977).

█ Plaintiffs rely on the Findings of Fact made by the late Judge Gitelson in *Crawford* in 1970. The court there found that the schools in the Los Angeles Unified School District were "caused to be segre-

gated" by numerous intentional acts and policies of the Los Angeles City School Board and that these actions constituted *de jure* segregation. (*See* Ex. 1, ¶¶ IV.21, p. 18 and IV.36, p. 24 *et. seq.*)

Given the fact that judicial findings after trial have once been made of *de jure* segregation (once approved of by the California Supreme Court, *see Crawford v. Board of Education,* 17 Cal.3d 280, 285, 130 Cal.Rptr. 724, 551 P.2d 28 (1976)), I find that plaintiffs have carried their burden here of showing at least a fair chance of success on the merits on this issue.

Because if the district is resegregated by implementation of the March 16 resolution, those represented by plaintiffs will likely be deprived of their Fourteenth Amendment rights and because the harm on defendants side, if any, consists largely of administrative inconvenience, I find that the balance of hardships tips sharply in plaintiffs' favor. With respect to the non-minority school children (who are not themselves parties to this action), whose parents have elected to retransfer them to neighborhood schools, I find no harm in the constitutional sense. While it is true that some burden may be imposed upon them by this TRO, that burden is no more than required by preservation of the *status quo* pending a hearing on the OSC.

In this respect, I find that the *status quo* at the present time is that the district has implemented a mandatory pupil assignment and transportation system since the beginning of the school year. No students assigned to other schools under this plan have yet commenced attending any neighborhood schools.

I find further that the March 16 resolution was passed with segregative intent, *i. e.,* it was done knowingly and with a full awareness of the segregative consequences which would be substantially certain to result from implementation of the resolution. Past intentional acts of segregation having been established for the purpose of this order, such further intentional segregative action is impermissible. *See Dayton I, supra,* 433 U.S. at 413–14, 97 S.Ct. at 2772–73;

*Dayton II, supra,* 443 U.S. at 531 n.5, 99 S.Ct. at 2976.

Again, I want to emphasize that this is only a ruling on the application for the TRO. No ruling on the merits is being made today.

For the reasons which I have stated, plaintiffs' application for a TRO will be granted.