**LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., Defendants-Appellants,**

v.

**LOS ANGELES BRANCH NAACP, et al., Plaintiffs-Appellees.**

No. 81–5772.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1982.

Decided Sept. 1, 1983.

As Amended Nov. 16, 1983.

G. William Shea, Peter W. James, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for plaintiffs-appellees.

Thomas I. Atkins, Gen. Counsel, Brooklyn Heights, N.Y., for defendants-appellants.

Before CHAMBERS, SNEED and SKOPIL, Circuit Judges.

SNEED, Circuit Judge:

The NAACP brought this action against a group of state and local educational authorities, alleging unconstitutional segregation in the Los Angeles public schools. The three local defendants, the Los Angeles Unified School District, the Board of Edu-

cation of the City of Los Angeles, and the Superintendent of Schools,[1] moved for summary judgment on the ground that the present suit was barred by the adjudication of an identical claim before the Superior Court of Los Angeles County in *Crawford v. Board of Education,* (No. C822854).[2] The district court denied the motion, 518 F.Supp. 1053, and certified this interlocutory appeal. We reverse and remand for such further proceedings as are consistent with this opinion.

## I.

### FACTS

In 1963, the California Supreme Court held in a unanimous decision that school boards are under an obligation to remedy racial segregation in the public schools, regardless of the cause of such segregation. *Jackson v. Pasadena City School District,* 59 Cal.2d 876, 881, 382 P.2d 878, 881–82, 31 Cal.Rptr. 606, 609–10 (1963).

Soon thereafter, *Crawford* was filed as a class action on behalf of black school children in the Los Angeles Unified School District,[3] seeking desegregation of the District's schools. After the failure of the District to formulate a satisfactory voluntary plan for desegregation, *Crawford* came to trial in 1968 in the Superior Court of Los Angeles County before Judge Alfred Gitelson. The parties agreed to limit the scope of the court's inquiry into the District's activities to the period from May 1, 1963 to the beginning of trial. After considering an enormous body of evidence and holding a lengthy trial, Judge Gitelson rendered judgment for the plaintiff class on May 12, 1970. Judge Gitelson found that a number of the schools in the District were segregated, and concluded that the Board of Education had segregated its students *de jure* as the result of policies, practices, and omissions on the part of the Board.[4]

The Board of Education appealed to the California Supreme Court, which affirmed the judgment of the Superior Court, but only on the basis of the Board's failure to remedy racial segregation in the public schools, as was required under the California State Constitution by *Jackson. Crawford v. Board of Education,* 17 Cal.3d 280, 285, 551 P.2d 28, 30, 130 Cal.Rptr. 724, 726 (1976) (*Crawford I*). It did not rest its decision on the Superior Court's finding of *de jure* segregation, although it stated that such finding was supported by the record. *Id.*

On remand to the Superior Court, Judge Paul Egly held extensive hearings on the appropriate remedy, and ordered mandatory busing to begin in September 1978.[5] However, on November 6, 1979, the California voters enacted Proposition 1, which restricted the power of the state courts to order busing and pupil assignment as remedies for school segregation to that exercised by the federal courts under the Fourteenth Amendment. The effect of Proposition 1, therefore, was to overrule the part of *Jackson* and the cases following it which permitted court-ordered busing and pupil assignment as remedies for school segregation even in the absence of *de jure* segregation.

The *Crawford* defendants then petitioned to the Superior Court to end mandatory school busing in Los Angeles. The court denied the request, holding that Proposition 1 did not apply to Los Angeles, since Judge Gitelson's 1970 decision had found *de jure* segregation, a violation of the Fourteenth Amendment for which busing is an appropriate remedy.

In December 1980, the California Court of Appeal reversed, and vacated the order refusing to terminate the mandatory busing plan. *Crawford v. Board of Education,* 113 Cal.App.3d 633, 170 Cal.Rptr. 495 (1980) (*Crawford II*). The court, in the light of subsequent United States Supreme Court opinions and its construction of Judge Gitelson's 1970 decision, held that the *Crawford* plaintiffs had not established the existence of *de jure* segregation in the District, as is

---

**1.** We refer to the local defendants collectively as the District.

**2.** The state defendants also moved for summary judgment on Eleventh Amendment and case or controversy grounds, and the district court granted their motions. 518 F.Supp. 1053, 1063–64. The NAACP has sought review of this decision separately from the present appeal.

**3.** The *Crawford* class (*Crawford* plaintiffs) was expanded later to include Mexican-American children in the Los Angeles schools.

**4.** *See Crawford v. Board of Education,* 113 Cal. App.3d 633, 642–44, 170 Cal.Rptr. 495, 501–02 (1980).

**5.** Judge Gitelson was defeated in his bid for reelection to the Superior Court, and Judge Egly was assigned the case.

needed under the Fourteenth Amendment for busing to be used as a court-ordered remedy. *Id.* at 638–46, 170 Cal.Rptr. at 499–504.[6] Noting that the District was still obligated under California law, as explicated in *Jackson* and *Crawford I,* even after Proposition 1 to remedy racial segregation in the public schools—as long as mandatory busing or pupil assignment is not included in any desegregation plan—the court issued a remittitur to the Superior Court to formulate a desegregation plan consistent with the requirements of Proposition 1. *Id.* at 636–37 n. 1, 651, 170 Cal.Rptr. at 497–98 n. 1, 507; *see also Crawford v. Board of Education,* 458 U.S. 527, 535, 102 S.Ct. 3211, 3217 & n. 12, 73 L.Ed.2d 948 (1982).

On July 2, 1981, the Board submitted a desegregation plan to the Superior Court, Judge Robert Lopez now presiding.[7] Judge Lopez accepted the plan, with modifications, on September 10, 1981.[8] The court held that the desegregation plan remedied *present conditions* in the District, and that the plan protected the rights of all students and met constitutional standards. Order Re Final Approval of School Board Desegregation Plan and Discharge of Writ of Mandate at 7 (Superior Court of Los Angeles County No. C822854) (September 10, 1981 Order).[9] The court stated that the "underlying issues [in *Crawford* ] have been resolved," *id.* at 8, and, on November 25, 1981, awarded costs and attorneys' fees, and terminated jurisdiction.[10]

Meanwhile, on April 15, 1981, the NAACP filed the present case in the District Court for the Central District of California as a class action on behalf of black children eligible to attend the Los Angeles schools. The plaintiffs alleged unconstitutional segregation in the Los Angeles Unified School District from its establishment until the present, and sought a temporary restraining order to enjoin the termination of mandatory busing in the District. The district court granted the temporary restraining order on April 17, 1981, 513 F.Supp. 717, but we vacated the order the following day. 650 F.2d 1004 (9th Cir.1981). On remand, the district court refused to grant the NAACP's motion for a preliminary injunction.

The District then moved for summary judgment on the ground that the doctrines of res judicata and collateral estoppel preclude this suit.[11] The district court denied

6. As the Supreme Court has explained, a holding of *de jure* segregation must be based on a finding of purpose or intent to segregate, *Keyes v. School District No. 1,* 413 U.S. 189, 208, 93 S.Ct. 2686, 2697, 37 L.Ed.2d 548 (1973), while *de facto* segregation only requires proof of the existence of racial imbalance "in the schools but with no showing that this was brought about by discriminatory action of state authorities." *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 17–18, 91 S.Ct. 1267, 1276–77, 28 L.Ed.2d 554 (1971). The Court of Appeal in *Crawford* concluded that the District did not act with segregative intent and discriminatory purpose. 113 Cal.App.3d at 649, 170 Cal.Rptr. at 506.

The Court of Appeal also upheld the constitutionality of Proposition 1. 113 Cal.App.3d at 650–56, 170 Cal.Rptr. at 506–10. Addressing this issue only, the Supreme Court affirmed the California appellate decision. *Crawford v. Board of Education,* 458 U.S. 527, 102 S.Ct. 3211, 73 L.Ed.2d 948 (1982).

7. Judge Egly recused himself from further participation in *Crawford.*

8. Soon thereafter, United Teachers Los Angeles (UTLA), an intervenor since 1979, filed a "Notice of Motion and Motion for Clarification of Order re Final Approval of School Board Desegregation Plan and Discharge of Writ of Mandate; Declaration and Points and Authorities in Support Thereof." Judge Lopez held a hearing on October 30, 1981 and denied this motion. UTLA continues to challenge the District's implementation of the September 10, 1981 Order on the grounds that it did not require the District to violate its collective bargaining agreement with UTLA members. UTLA alternatively claims that if the order did require a breach of their agreement, the plan was not a reasonably feasible one as required under *Crawford II.*

9. Initially, the *Crawford* plaintiffs appealed the September 10, 1981 Order. The appeal was dismissed on May 24, 1983, however, pursuant to the *Crawford* plaintiffs' own motion. *Crawford v. Board of Education,* No. 2d Civil 66706 (Cal. Ct. App. May 24, 1983).

10. The District appealed the award of attorneys' fees. The California Court of Appeal ruled that the attorneys' fees appeal would be briefed and considered after UTLA's appeal was resolved. *See Crawford v. Board of Education,* No. 2d Civil 67061 & 67532 (Cal. Ct. App. Jan. 28, 1983).

11. The District also contended that the district court should abstain from deciding this case, since *Crawford* was still before the California courts. With the termination of state court

the motion on July 16, 1981, but certified an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.

## PRECLUSION OF THE DE JURE SEGREGATION CLAIM

The District asserts that the NAACP is precluded under the doctrines of res judicata and collateral estoppel from litigating its contention that the Los Angeles schools were segregated *de jure,* since that claim was adjudicated in *Crawford.* The district court under the circumstance it confronted refused to apply res judicata or collateral estoppel. We reverse.

As the Supreme Court explained in *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980):

The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac,* 94 U.S. 351, 352 [24 L.Ed. 195]. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States,* 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] .... As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

In applying the requirements for res judicata and collateral estoppel, we are obligated by 28 U.S.C. § 1738 "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Con-*

*struction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). We therefore must turn to the rules for preclusion followed by the courts of California. *See Miofsky v. Superior Court,* 703 F.2d 332, 336 (9th Cir.1983).

### A. *Res Judicata*

■ Under California law, the application of res judicata is dependent on the conclusion that: (1) there was a final judgment on the merits in the earlier proceeding; (2) the claims were part of a cause of action that was litigated and decided, or that might have been litigated, in the earlier proceeding; and (3) the parties against whom the principle is invoked were parties or in privity with a party to the prior adjudication. *See Dillard v. McKnight,* 34 Cal.2d 209, 214, 209 P.2d 387, 391 (1949); *Mattson v. Costa Mesa,* 106 Cal.App.3d 441, 446, 164 Cal.Rptr. 913, 916 (1980); *see also Sea-Land Services Inc. v. Gaudet,* 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974). We examine each of these requirements below.

#### 1. *Final Judgment*

The district court, having before it only the remittitur from the California Court of Appeal, held that there was no final judgment on the merits in *Crawford,* and therefore refused to preclude litigation in the federal court of the NAACP's claim. 518 F.Supp. at 1058–59. However, as noted above, on September 10, 1981, the Superior Court of Los Angeles County approved a desegregation plan for the Los Angeles schools, and stated that all the underlying issues in *Crawford* have been resolved. It held, "After the balancing and reconciliation of many competing values, the Court finds that the Plan, as ordered changed by the Court, will protect the rights of all students and meet Constitutional standards. The time has come to end these proceedings." September 10, 1981 Order at 7. The *Crawford* plaintiffs' appeal of this order was dropped pursuant to their own motion.[12] Thus, the court's jurisdiction over

jurisdiction over *Crawford* plaintiffs, however, the basis for invoking the abstention doctrine has disappeared, and the parties agree that abstention is no longer an issue in this appeal. In addition, the District argued unsuccessfully that the NAACP is barred from raising its *de jure* claim here by the doctrine of virtual representation. 518 F.Supp. at 1060. Since we hold that res judicata and collateral estoppel pre-

clude the present claim, we do not reach the virtual representation issue.

**12.** *See supra* note 9. Intervenor UTLA continues to challenge the implementation of the September 10, 1981 Order. *See supra* note 8. Under California law,

[a]n appeal from a judgment by some of the defendants, although the notice of appeal is

the *Crawford* plaintiffs ended, save for the determination of attorneys' fees. Moreover, on November 25, 1981, the Superior Court awarded fees and terminated all jurisdiction over the *Crawford* plaintiffs, observing as it did so, "There must be finality in the law." Final Order Terminating Jurisdiction at 16 (Superior Court of Los Angeles County No. C822854).[13] There is, therefore, now a final judgment on the merits in *Crawford*.

### 2. Claims Litigated

■ When there is a final judgment between the same parties or their privies, res judicata will preclude the maintenance of a second suit on the same cause of action, settling not only every issue that was raised, but also every issue that might have been raised in the first action. *Olwell v. Hopkins,* 28 Cal.2d 147, 152, 168 P.2d 972, 975 (1946); *Mattson,* 106 Cal.App.3d at 446, 164 Cal.Rptr. at 916. For res judicata to preclude the present action, therefore, the NAACP's claim of *de jure* segregation in the Los Angeles schools must have been part of a cause of action that was actually litigated, or might have been litigated, in *Crawford*. We hold that this element of res judicata has been satisfied.

■ Initially we must demonstrate that the claim of the plaintiff class in *Crawford* was the same as that alleged by the present class in this case. Under California's "primary rights" theory of res judicata, a " 'cause of action' is based upon the harm suffered" by the plaintiff, and not upon the legal ground for relief, since even "where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief."

*Slater v. Blackwood,* 15 Cal.3d 791, 795, 543 P.2d 593, 594–95, 126 Cal.Rptr. 225, 226–27 (1975). In both *Crawford* and the present case, the harm alleged to have been suffered by the plaintiff class is the same—unconstitutional segregation of the Los Angeles schools. For this purpose it makes no difference that the cause might rest on both state and federal constitutional grounds. *See Boccardo v. Safeway Stores, Inc.,* 134 Cal.App.3d 1037, 1043, 1054, 184 Cal.Rptr. 903, 907, 914 (1982) (state and federal claims based on right to be free from economic injury caused by price fixing are part of same cause of action). Thus, *Crawford* and this case are part of the same cause of action.

Next, we must show that the claim of *de jure* segregation advanced in the present case was actually litigated, or might have been litigated, in *Crawford*. To do this a brief review of the California proceedings is necessary.

In his 1970 decision, Judge Gitelson held, inter alia, that there was *de jure* segregation in the Los Angeles Unified School District in violation of the Fourteenth Amendment. Findings of Fact and Conclusions of Law, at Conclusions 7–10 (Superior Court of Los Angeles County No. C822854 May 12, 1970). Numerous specific findings of fact demonstrate this. *E.g., id.* at Findings 1(c), 1(h), 38, 59, 82. The District appealed that holding to the California Supreme Court, which, while it declined to rest its decision on *de jure* segregation, observed that Judge Gitelson's findings supported his conclusion. *Crawford I,* 17 Cal.3d at 285, 551 P.2d at 30, 130 Cal.Rptr. at 726. But in the second round of appeals of the 1970 judgment following the passage of Proposition 1, the

general in its terms, is of necessity an appeal from only that portion of the judgment which injuriously affects the appealing defendants, and is thus, in effect, an appeal from ... the portion of the judgment adverse to their interests, unless the reversal or modification of the whole judgment is essential to protect the interests of the appealing defendants.

*Lake v. Superior Court,* 187 Cal. 116, 119–20, 200 P. 1041, 1042 (1921). And, "the doctrine of res judicata applies to those portions of a judgment which have become final." *Moore v. Wood,* 26 Cal.2d 621, 629, 160 P.2d 772, 776 (1952). UTLA appeals only the interpretation of the plan, not the law established in the prior *Crawford* litigation. We see no reason to believe, and the parties have not contended, that UTLA's claim is not completely severable from the merits decided in *Crawford I* and *Crawford*

II. *See American Enterprise, Inc. v. Van Winkle,* 39 Cal.2d 210, 216–19, 246 P.2d 935, 938–40 (1952). UTLA's appeal, therefore, does not affect the finality of the *Crawford* plaintiffs' action for res judicata purposes.

**13.** The District appeals the award of the attorneys' fees. Such an award is considered part of the determination of costs under California law, *see Folsom v. Butte County Assoc. of Governments,* 32 Cal.3d 668, 678, 186 Cal.Rptr. 589, 596, 652 P.2d 437, 444 (1982), and, this appeal does not affect the final judgment on the merits of the *Crawford* plaintiffs' litigation. *See Perry v. West Coast Bond & Mortgage Co.,* 136 Cal.App. 557, 559, 29 P.2d 279, 280 (1934). *See also Klinker v. Klinker,* 132 Cal.App.2d 687, 693, 283 P.2d 83, 87 (1955).

California Court of Appeal in *Crawford II* reviewed the *de jure* claim, and reversed. The court held that Judge Gitelson had only found *de facto,* and not *de jure,* segregation, explaining:

> [W]e conclude that the racial imbalance and segregation which existed in many schools in the District and the Board's actions in relation thereto did not constitute a violation of the equal protection clause of the Fourteenth Amendment . . . in that racial imbalance and segregation did not result from Board acts performed with segregative intent and discriminatory purpose.

113 Cal.App.3d at 649, 170 Cal.Rptr. at 506. The Supreme Court of California declined to review the case. Thus, the *de jure* segregation claim was decided in *Crawford.*

The NAACP argues that for res judicata to apply, the claim of *de jure* segregation not only must have been decided in *Crawford,* it must also have been properly litigated there. According to the NAACP, the *Crawford* plaintiffs, relying on *Jackson,* planned their argument and presentation of evidence before the Superior Court to establish the existence of *de facto* segregation, and the finding of *de jure* segregation was the reaction of Judge Gitelson *sua sponte* to the evidence. In addition, the NAACP contends that the Court of Appeal held only that *de jure* segregation was not proven, and that a holding that an issue was "not proven" is, for purposes of res judicata, distinguishable from a holding that an issue was "disproved." We cannot accept these propositions.

First, the record fails to support the NAACP's assertion that the *Crawford* plaintiffs did not attempt to establish *de jure* segregation on the part of the District. The plaintiffs moved to be allowed to show a bad faith intent to segregate the Los Angeles schools on the part of the District, and Judge Gitelson granted the motion, E.R. 4, Ex. 5–6, thereby placing the issue of segregative intent before the court.[14] Moreover, as mentioned above, many of Judge Gitelson's findings of fact and conclusions of law were devoted to the *de jure* claim. No doubt it is true that the *Crawford* plaintiffs would have placed greater emphasis on *de jure* segregation had Proposition 1 then been in force. However, it provides no basis to deny the ordinary res judicata effect of the *Crawford* decision.

*See Jorgensen v. Jorgensen,* 32 Cal.2d 13, 19, 193 P.2d 728, 732 (1948) ("a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case"). Nor in considering res judicata effect of a judgment on the merits, do we distinguish between a failure to prove a claim in an earlier proceeding, and a holding that the claim had no merit. *See Kulchar v. Kulchar,* 1 Cal.3d 467, 473, 462 P.2d 17, 20, 82 Cal.Rptr. 489, 492 (1969); Restatement (Second) of Judgments § 25, comment b ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment."); *see also People v. Sims,* 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982). Thus, the fact that the *Crawford* plaintiffs placed greater emphasis on the *de facto,* rather than the *de jure,* segregation issue before the Superior Court does not prevent us from concluding that the claim was litigated, as well as decided in the California courts. It is not necessary for us to agree with either the manner in which it was litigated or with the final result of that litigation. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). The important fact is that it was litigated.

Our invocation of res judicata is strengthened by the fact that the NAACP did not attempt to establish *de jure* segregation upon the remand following *Crawford II.* A litigant cannot simply move his case to federal court because he anticipates an unwelcome, albeit partially victorious, outcome in the state courts and thereby escape the ordinary preclusive effects of that outcome. *See Allen v. McCurry,* 449 U.S. 90, 104–05, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980).

More troublesome is fixing the scope of the res judicata bar. The district court believed that the *Crawford* litigation would preclude relitigation of the *de jure* claim only for the years 1963–1968, since the evidence presented to Judge Gitelson in the Superior Court involved the District's activities only during that period. 518 F.Supp. at 1060 n. 7. We disagree.

The parties were not limited to 1963–1968 period in their presentation of evidence. Although the *Crawford* parties stipulated that the plaintiffs need not introduce any evidence of the District's activities other

---

**14.** The *Crawford* plaintiffs pleaded violations of the Fourteenth Amendment and the California Constitution, and Judge Gitelson based his decision on both constitutions. E.R. 3, at 28–29.

than during the 1963 to 1968 period,[15] each was free to move for admission of evidence dating from before 1963 and after 1968. E.R. 4, Ex. 7. Since res judicata precludes claims that might have been litigated, as well as those that actually were litigated, the res judicata bar embraces the period between 1963 and Judge Gitelson's decision in 1970.

The existence and scope of the post-1970 bar involves a similar analysis. According to both the district court and the parties, the *Crawford* plaintiffs could have reopened the *de jure* segregation claim on remand from the Court of Appeal in *Crawford II* to the Superior Court in 1981. 518 F.Supp. at 1059. No party chose to do so, however. The opportunity was permitted to slip by. Thus the *de jure* claim for the period from May 12, 1970 to September 10, 1981, when Judge Lopez terminated jurisdiction over the merits and remedies in the case, is barred. *Mattson v. Costa Mesa,* 106 Cal. App.3d 441, 446, 164 Cal.Rptr. 913, 916 (1980).[16]

### 3. *Same Parties*

■ Fixing the identity of the parties barred by res judicata also poses some difficulty. The rule is that a judgment for the named plaintiffs in a class "will be binding on all the persons belonging to the class . . . and . . . subsequently coming into the class." *King v. International Union of Operating Engineers,* 114 Cal.App.2d 159, 164–65, 250 P.2d 11, 14 (1952). It follows that the judgment in *Crawford* therefore binds all the members of the *Crawford* class. That class closed on the date the *Crawford* litigation terminated, September 10, 1981.

The question then arises whether the *Crawford* judgment can bar the present case. Our difficulty springs from the fact that the present class is not completely identical to that of *Crawford.* The present class, the class on whose behalf this suit was brought, did not close on September 10, 1981. It remains open.[17] School children not in the *Crawford* class now are in the class involved in the present suit.

■ Where, however, the earlier and later classes are "substantially identical" and the interests of the later class were represented by the earlier, a judgment in the earlier case can preclude the later one. *See Bell v. Board of Education,* 683 F.2d 963, 964–65 (6th Cir.1982); *Bronson v. Board of Education,* 525 F.2d 344, 349 (6th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976); *Antonioli v. Lehigh Coal and Navigation Co.,* 451 F.2d 1171, 1177 & n. 22 (3d Cir.1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); *see also Fowler v. Birmingham News Co.,* 608 F.2d 1055 (5th Cir.1979); *Rynsburger v. Dairymen's Fertilizer Coop., Inc.,* 266 Cal.App.2d 269, 278, 72 Cal.Rptr. 102, 107 (1968) (adjudication in nuisance action litigated by the government can bind a later class action on an identical claim because the class was so well represented in the earlier suit that its "interest received actual and efficient protection").

The *Bronson* court explained:

*Crawford* plaintiffs prevailed on their state law claim, the federal claim was also litigated and decided, in favor of the defendants, *see Crawford v. Board of Education,* 113 Cal.App.3d at 649, 170 Cal.Rptr. at 506, and is therefore barred. *See Boccardo v. Safeway Stores, Inc.,* 134 Cal.App.3d 1037, 1054, 184 Cal.Rptr. 903, 914 (1982).

---

**15.** The *Crawford* defendants also agreed not to object to any evidence from the 1963–1968 period on materiality or relevancy grounds, and to waive their right to move to dismiss the action for failure to prosecute. E.R. 4, Ex. 7. It should be noted that the 1963–1968 limitation on the introduction of evidence was based, at least in part, on the absence of reliable records for the years before 1966. E.R. 5, Ex. DD, at 8.

**16.** The NAACP also argues that res judicata cannot be a bar here because the decision in favor of the plaintiffs in *Crawford* was based entirely on state law, *see Crawford v. Board of Education,* —— U.S. ——, 102 S.Ct. 3211, 3214 & n. 2, 73 L.Ed.2d 948 (1982). The NAACP errs in this conclusion, however. While the

**17.** On February 16, 1982, the district court certified the present class as consisting of all black students who live within the District and are eligible to attend one of the District's schools during the pendency of this lawsuit. The *Crawford* class consisted of black and Mexican-American children attending the District's schools.

[A] public body should not be required to defend repeatedly against the *same* charge of improper conduct if it has been vindicated in an action brought by a person or group who validly and fairly represent those whose rights are alleged to have been infringed. Though the plaintiffs in the instant action are not the same persons as those who instituted [the earlier action], that action was brought to vindicate the rights of all minority school children and parents affected by the actions and policies of the ... Board. There is a strong community of interest between the [earlier class] and the *Bronson* plaintiffs and both actions sought relief on behalf of the same large group of black citizens. For the purposes of [preclusion] we do not consider the plaintiffs in the present action to be "strangers" to the [earlier] litigation.

525 F.2d at 349 (emphasis in original).[18]

■ The members of the class of the present case, which grows in numbers each year, are "substantially identical" to those of *Crawford*. Their interests were well represented there. We hold, therefore, that the *Crawford* adjudication bars the present class from relitigating the claim that the Los Angeles schools were segregated *de jure* on or before the final judgment in *Crawford*. *See Garcia v. Board of Education,* 573 F.2d 676, 678–79 (10th Cir.1978) (res judicata bars class action on behalf of Hispanic children attending school affected by desegregation plan where all Hispanic children in school district were parties and had their interests represented in earlier suit, even though earlier suit was terminated before later suit was brought); *Antonioli,* 451 F.2d at 1177 & n. 22.

The NAACP presents three arguments against this conclusion. First, it contends that res judicata applies only to classes that are formally certified, which that in *Crawford* was not. Second, the NAACP claims that the *Crawford* class does not embrace children who entered the Los Angeles schools after May 1970, when Judge Gitelson issued his decision. Finally, it asserts that, in the context of class actions, res judicata only precludes claims that were fully litigated and decided, and not claims that might have been litigated, but were not. We shall address each argument.

■ First, while it is true that the class in *Crawford* was never formally certified since formal procedures for class certification were not available to the Superior Court of Los Angeles County until 1973, that does not preclude giving res judicata effect to the *Crawford* decision. The California courts have treated *Crawford* as a class action, *see, e.g., Crawford I,* 17 Cal.3d at 286, 551 P.2d at 31, 130 Cal.Rptr. at 727, as has the Supreme Court, *Crawford v. Board of Education,* —— U.S. ——, 102 S.Ct. 3211, 3214, 73 L.Ed.2d 948 (1982). We, too, are entitled to treat it as a class action. *See Jackson v. Hayakawa,* 605 F.2d 1121, 1126 & n. 7 (9th Cir.1979), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (giving res judicata effect to judgment against class never formally certified by California courts, but treated by them as a class action); *see also Johnson v. General Motors Corp.,* 598 F.2d 432, 434–35 (5th Cir.1979).

■ Second, the *Crawford* class did not close in 1970. The order issued by Judge

---

18. In *Bronson v. Board of Education,* the court held that collateral estoppel, rather than res judicata, barred a second class action where the members of the later class were different from those of the earlier, and the earlier class was "spurious," *see Dickinson v. Burnham,* 197 F.2d 973, 979 (2d Cir.1952), rather than a "true class." The *Bronson* court reasoned that although the parties to the earlier and later proceedings were not the same, the two actions were brought to vindicate identical rights. *See also Bell v. Board of Education,* 683 F.2d 963, 964–65 (6th Cir.1982). This aspect of *Bronson*

is distinguishable from the present case, however, since *Crawford* was a true class action, rather than a spurious one, and was treated as such by the California courts, thereby making the application of res judicata appropriate to the present class action. *Id.* at 969–70 (Brown, J., concurring). It is also noteworthy that the *Bronson* class scarcely overlapped with the earlier proceeding, while almost every member of the present class was also a party in *Crawford* when this action was filed, and today the two classes remain substantially identical.

Lopez on September 10, 1981, approving the District's plan and resolving the merits of *Crawford,* refers to "present conditions" in the District. The order makes it crystal clear that the remedy is intended to benefit school children attending the Los Angeles schools in 1981, and not merely class members as of May 1970. Indeed, Judge Lopez devoted considerable attention to the fact that conditions had changed substantially between 1963 and 1981. *See* September 10, 1981 Order at 4–7. Thus, the court treated the *Crawford* class as remaining open until 1981, and not as having closed with Judge Gitelson's decision in 1970. It follows that the children who entered the class after 1970 and before September 10, 1981 fall into the category of persons "subsequently coming into the class," and are bound by the final judgment on the merits. *See Williams v. California,* 62 Cal.App.3d 960, 965, 133 Cal.Rptr. 539, 542 (1976).

The NAACP's third contention—that only claims that were fully litigated can be barred—is also without merit. It relies for this proposition on *Bronson v. Board of Education,* 535 F.Supp. 846 (S.D.Ohio 1982), where it was held that a 1965 district court decision that the Cincinnati schools were not illegally segregated did not preclude relitigation of pre-1965 segregation in Cincinnati. The reason for the district court's holding was that the parties to the earlier decision did not have the benefit of subsequent Supreme Court decisions, and therefore did not litigate the segregation issue with the same emphasis and as fully as the plaintiffs in the later proceeding would do. *Id.* at 900–06.

The Sixth Circuit, subsequent to the filing of the NAACP brief in the present case, reversed this decision. *Bronson v. Board of Education,* 687 F.2d 836 (6th Cir.1982). The court noted that the Supreme Court has not set forth a new theory of liability for unlawful segregation under the Fourteenth Amendment, but has merely suggested

new, non-exclusive methods of establishing a constitutional violation. *Id.* at 841.

The Sixth Circuit in this *Bronson* case looked to *Bell v. Board of Education,* 683 F.2d 963, 965 (6th Cir.1982), and to its earlier decision in *Bronson,* 525 F.2d at 349. This earlier decision held relitigation was precluded because the issues had been decided in the earlier actions, the classes were adequately represented there, and there has been no significant change in the law.

■ The present case clearly meets these requirements. The *de jure* claim was decided in *Crawford.* No one disputes that the *Crawford* class was adequately represented.[19] And while the passage of Proposition 1 has altered California law, the present case is based on *federal* law, in which the basic theory of liability for unlawful segregation has remained substantially the same. *See Bronson,* 687 F.2d at 841; *Crawford v. Board of Education,* 113 Cal.App.3d at 638–41, 170 Cal.Rptr. at 498–501; *see also Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976); *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 11–16, 91 S.Ct. 1267, 1273–76, 28 L.Ed.2d 554 (1971).

As the *Bell* court noted, if future classes are not barred by an earlier decision of no segregation, then:

> we would open up for relitigation all school desegregation judgments .... A plaintiff who disagrees with a prior final determination of liability ... would be entitled to relitigate the finding of liability. Rights and duties in desegregation cases previously litigated and established would never become final. They would always be subject to collateral attack. Desegregation judgments, like tickets to the theater, would be good for today's show only.

683 F.2d at 966. We can only add that to limit res judicata in school desegregation cases to those issues adjudged after the fact to have been fully and adequately litigated would be to endow such cases with everlast-

---

19. Judge Lopez characterized the *Crawford* plaintiffs as the "prevailing party" and awarded their counsel over one million dollars in attorneys' fees. Final Order Terminating Jurisdiction at 1, 14 (Superior Court of Los Angeles County No. C822854 Nov. 25, 1981).

ing life. This we should not do. As Judge Lopez observed in his September 10, 1981 Order at 7, "There must be finality in the law."

Thus, we hold that all members of the class in this litigation are barred by res judicata from relitigating the claim of *de jure* segregation in the District occurring before September 10, 1981.

### B. *Collateral Estoppel*

■ This conclusion is buttressed by collateral estoppel. For collateral estoppel to apply, there must be a final judgment on the merits, the issue decided in the prior adjudication must be identical to the one presented in the later proceeding, and the party against whom the plea of estoppel is asserted must have been a party or in privity with a party to the earlier action. *Bernhard v. Bank of America,* 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942).

The discussion of the final judgment and identical party requirements in the context of res judicata applies equally to collateral estoppel. The NAACP asserts, however, that even if these two requirements are met, collateral estoppel cannot preclude the present action, since the doctrine only affects issues that are "litigated and determined." *See People v. Sims,* 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982). *De jure* segregation, the NAACP asserts, was *raised* and *decided* in *Crawford,* but not *litigated.* This position parallels that taken with respect to res judicata. It is likewise erroneous.

■ As previously noted, the *Crawford* plaintiffs raised, and had the opportunity fully to litigate, the *de jure* issue, not only for 1963–1968, but also for the pre-1963 era, and for the period from the beginning of the Superior Court trial in 1968 until the termination of jurisdiction over them in 1981. However, the *Crawford* plaintiffs chose not to do so as extensively as it might have. Thus, *de jure* segregation falls into the category of issues which were pleaded and decided, but not as fully litigated as it was possible to do as a result of the choice of the party against whom estoppel is asserted.

Under California law, when an issue is decided against a party which has chosen not to litigate it, that party is estopped from relitigating the issue. *See People v. Sims,* 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982). There, a county was collaterally estopped from prosecuting one accused of welfare fraud because it failed to present evidence of fraud in an administrative hearing brought by the accused in an effort to disprove the allegation prior to the prosecution.

The California Supreme Court said:

> What is significant here is that the County had notice of the hearing as well as the opportunity and incentive to present its case to the hearing officer .... The People cannot now take advantage of the fact that the County ... chose not to present evidence at the prior proceeding.

32 Cal.3d at 481–82, 651 P.2d at 329, 186 Cal.Rptr. at 85.

■ Although *Sims* is distinguishable from the present case, it remains true that the *Crawford* plaintiffs had both the opportunity and incentive to litigate fully the question of *de jure* segregation in the District before 1981. Only by doing so could they obtain mandatory busing. They did not do so. They came to federal court. We hold that they are estopped to litigate in this forum *de jure* segregation in the District before September 10, 1981.

### III.

### CONCLUSION

The conditions for applying both res judicata and collateral estoppel have been met in the present case. Moreover, the California courts amply satisfied the requirements of the Due Process Clause in the *Crawford* litigation. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

We therefore hold that the present plaintiffs are barred from relitigating the claim that the District was segregated *de jure* on or before September 10, 1981. The plaintiffs, of course, are not barred from assert-

ing that the District was segregated unlawfully after that date. On remand the plaintiffs may present evidence at trial of relevant District actions before 1981, but the rules of relevancy should be evenly applied. *See Bronson,* 687 F.2d at 839.

REVERSED AND REMANDED.